LAURA R. JACOBSEN
NV BAR NO. 13699
McDONALD CARANO LLP
100 W. Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
Telephone: (775) 788-2000
Facsimile: (775) 788-202
ljacobsen@mcdonaldcarano.com

JOHN B. SULLIVAN (CA Bar No. 96742)
DONALD H. CRAM (CA Bar No. 160004)
dhc@severson.com
MARY KATE KAMKA (CA Bar No. 282911)
mkk@severson.com
LASZLO LADI (CA Bar No. 265564)
ll@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
Ditech Financial LLC
formerly known as
Green Tree Servicing LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Lee C. Kamimura, individually and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Ditech Financial LLC formally known as Green Tree Servicing, LLC,<br><br>Defendant. | Case No. 2:16-cv-00783-APG-CWH<br><br>**DEFENDANT DITECH FINANCIAL LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

Defendant Ditech Financial LLC moves for summary judgment or, in the alternative,

partial summary judgment on Kamimura's complaint and each of its claims that Ditech

negligently and willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*  This

motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that

there is no genuine issue as to any material fact and that Ditech is entitled to judgment as a matter of law.  Alternatively, Ditech moves for partial summary judgment on either Kamimura's claim that Ditech negligently violated the FCRA or Kamimura's claim that Ditech willfully violated the FCRA.  The alternative motion is made on the ground that there is no triable issue of material fact as to plaintiff's claim that Ditech negligently or willfully violated the FCRA.

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the previously filed Declaration of Bradford Hardwick in Opposition to Plaintiffs' Motion for Class Certification and its attached exhibits (*see* Dkt. No. 76), the previously filed Declaration of Donald H. Cram in Opposition to Plaintiffs' Motion for Class Certification and its attached exhibits (Dkt. No. 68), the Second Amended Complaint (Dkt. No. 16) and all other pleadings and records on file in this action, and upon any oral argument that the Court may entertain on this motion.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 2

    A.    Soft Credit Pulls..................................................................................... 2

    B.    Ditech's Practices for Reviewing Accounts in Bankruptcy..................... 3

    C.    Facts Underlying Kamimura's Claim ..................................................... 4

III.  SUMMARY JUDGMENT STANDARDS ........................................................... 5

IV.  THE COURT SHOULD GRANT DITECH'S MOTION FOR
SUMMARY JUDGMENT .................................................................................. 6

    A.    Ditech Did Not Commit Any Negligent Violation of the FCRA ............. 7

        1.    Ditech Had A Permissible Purpose for Reviewing Kamimura's
Account .................................................................................... 7

        2.    Kamimura Suffered No Actual Damages As a Result of the Soft
Credit Pulls............................................................................. 11

    B.    Ditech Did Not Commit Any Willful Violation of the FCRA................. 13

V.   CONCLUSION.................................................................................................. 18

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

CASES

4

*Abdelfattah v. Carrington Mortgage Servs. LLC*,
  No. C-12-04656-RMW, 2013 WL 495358 (N.D. Cal. Feb. 7, 2013)........................................13

5

6

*Abeyta v. Bank of Am.*,
  No. 215CV02320RCJNJK, 2016 WL 1298109 (D. Nev. Mar. 31, 2016)....................................9

7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................................................6

8

9

*Banga v. Experian Info. Sols., Inc.*,
  No. C 09-04867 SBA, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013)....................................15

10

11

*Banga v. First USA, NA*,
  29 F. Supp. 3d 1270 (N.D. Cal. 2014) ................................................................8, 11, 15, 16

12

*Beckstrom v. Direct Merch.'s Credit Card Bank*,
  No. CIV.04-1351 ADM/RLE, 2005 WL 1869107 (D. Minn. Aug. 5, 2005) ............................10

13

*Bickley v. Dish Network, LLC*,
  751 F.3d 724 (6th Cir. 2014) .................................................................................................10

14

15

*Birmingham v. Experian Info. Solutions, Inc.*,
  633 F.3d 1006 (10th Cir. 2011) ..............................................................................................15

16

*Camacho v. Bridgeport Fin. Inc.*,
  430 F.3d 1078 (9th Cir. 2005) ..................................................................................................8

17

18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................................6

19

20

*Crabill v. Trans Union, L.L.C.*,
  259 F.3d 662 (7th Cir. 2001) ..................................................................................................11

21

*Crehin v. ARS Nat. Servs.*,
  No. 8:13-CV-01497-SVW, 2014 WL 104073 (C.D. Cal. Jan. 9, 2014)....................................11

22

23

*Davenport v. Sallie Mae, Inc.*,
  124 F. Supp. 3d 574 (D. Md. 2015) ........................................................................................13

24

25

*Farrin v. Nationstar Mortg. LLC*,
  No. 15-CV-102-LM, 2016 WL 6407841 (D.N.H. Oct. 28, 2016)....................................9, 16, 17

26

*Finn v. City of Boulder City*,
  No 2:14-cv-01835-JAD-GWF, 2018 WL 473001 (D. Nev. Jan. 17, 2018) ...............................6

27

28

*Fregoso v. Wells Fargo Dealer Servs., Inc.*,
   No. CV 11-10089 SJO AGRX, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012) ......................... 13

*Fuges v. Sw. Fin. Servs., Ltd.*,
   707 F.3d 241 (3d Cir. 2012) ................................................................................................ 15

*Fuges v. Sw. Fin. Servs., Ltd.*,
   No. 2:09-CV-00699, 2011 WL 5865961 (E.D. Pa. Nov. 22, 2011) ........................................ 15

*Germain v. Bank of Am., N.A.*,
   No. 13-CV-676-BBC, 2014 WL 5802018 (W.D. Wis. Nov. 7, 2014) ...................................... 10

*Hammer v. Sam's E., Inc.*,
   754 F.3d 492 (8th Cir. 2014) .............................................................................................. 15

*Johnson v. Home State Bank*,
   501 U.S. 78 (1991) ............................................................................................................... 9

*Kennedy v. Victoria's Secret Stores, Inc.*,
   No. CIV.A. 03-2691, 2004 WL 2186613 (E.D. La. Sept. 29, 2004) ........................................ 10

*Kirchner v. Shred-it USA Inc.*,
   No. CIV. 2:14-1437 WBS, 2014 WL 6685210 (E.D. Cal. Nov. 25, 2014) ............................... 14

*Kowall v. GMAC Mortg., LLC*,
   No. 11-15454, 2012 WL 884851 (E.D. Mich. Mar. 15, 2012) ................................................. 8

*Lamie v. United States Trustee*,
   540 U.S. 526 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ........................................................ 9

*Levine v. World Fin. Network Nat. Bank*,
   554 F.3d 1314 (11th Cir. 2009) ............................................................................ 8, 14, 15, 16

*Long v. Tommy Hilfiger U.S.A., Inc.*,
   671 F.3d 371 (3d Cir. 2012)............................................................................................ 14, 16

*Maldonado v. HSBC Mortg. Sys., Inc.*,
   No. 216CV00784JADVCF, 2017 WL 3496460 (D. Nev. Aug. 15, 2017)................................. 12

*McNall v. Credit Bureau of Josephine Cty.*,
   689 F. Supp. 2d 1265 (D. Or. 2010) .................................................................................... 10

*Middleton v. CCB Credit Servs., Inc.*,
   No. 2:12-CV-02012-APG, 2014 WL 3513386 (D. Nev. July 14, 2014) .................................. 12

*Miller v. Rubin & Rothman, LLC*,
   No. CIV. 10-2198 MJD/JJK, 2011 WL 4359977 (D. Minn. Sept. 19, 2011)............................ 10

*Myers v. Bennett Law Offices*,
   238 F. Supp. 2d 1196 (D. Nev. 2002) .................................................................................. 12

*Myers v. Stoneleigh Recovery Assocs.*,
   No. CIV S-11-1753 LKK, 2012 WL 1356752 (E.D. Cal. Apr. 18, 2012) .................................. 11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ................................................................................................. 5

*Noble v. Nevada Checker Cab Corp.*,
   No. 215CV02322RCJVCF, 2016 WL 1298110 (D. Nev. Mar. 31, 2016) ................................. 14

*In re Ocwen Loan Servicing LLC Litig.*,
   240 F. Supp. 3d 1070 (D. Nev. 2017) ..................................................................................... 12

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
   457 F.3d 963 (9th Cir. 2006) ................................................................................................... 6

*Pintos v. Pac. Creditors Ass'n*,
   No. C 03-5471 CW, 2011 WL 3880411 (N.D. Cal. Sept. 2, 2011) ........................................... 7

*Ruffin-Thompkins v. Experian Info. Sols., Inc.*,
   422 F.3d 603 (7th Cir. 2005) .................................................................................................. 12

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ....................................................................................................... *passim*

*Saumweber v. Green Tree Servicing, LLC*,
   No. 13-CV-03628 SRN/SER, 2015 WL 2381131 (D. Minn. May 19, 2015) .............. 10, 13, 17

*Scaffidi v. United Nissan*,
   No. CV-S-04-1366 PMPLRL, 2005 WL 3737892 (D. Nev. Dec. 30, 2005) ............................ 15

*Shlahtichman v. 1-800 Contacts, Inc.*,
   615 F.3d 794 (7th Cir. 2010) .................................................................................................. 17

*Smith v. One Nevada Credit Union*,
   No. 216CV02156GMNNJK, 2017 WL 2803169 (D. Nev. June 27, 2017) ................................ 12

*Star Phoenix Mining Co. v. West Bank One*,
   147 F.3d 1145 (9th Cir. 1998) .................................................................................................. 9

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ................................................................................................... 6

*Taylor v. Tenant Tracker, Inc.*,
   710 F.3d 824 (8th Cir. 2013) .................................................................................................. 12

*Thao Pham v. Solace Fin., LLC*,
   No. 12-C-02413 RMW, 2012 WL 5471160 (N.D. Cal. Nov. 9, 2012) ...................................... 7

*Toliver v. Experian Info. Sols., Inc.*,
   973 F. Supp. 2d 707 (S.D. Tex. 2013) ................................................................................... 15

*Trikas v. Universal Card Servs. Corp.*,
   351 F. Supp. 2d 37 (E.D.N.Y. 2005) ................................................................. 11

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) .............................................................................................. 7

*United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*,
   545 F.3d 1134 (9th Cir. 2008) ........................................................................... 7

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ........................................................................... 6

*Van Straaten v. Shell Oil Prod. Co. LLC*,
   678 F.3d 486 (7th Cir. 2012) ........................................................................... 14

*Vanaman v. Nationstar Mortg., LLC*,
   No. 215CV00906KJDNJK, 2017 WL 1097189 (D. Nev. Mar. 22, 2017) ........................*passim*

*Wantz v. Experian Info. Sols.*,
   386 F.3d 829 (7th Cir. 2004) ........................................................................... 12

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
   435 F.3d 989 (9th Cir. 2006) ............................................................................. 6

*Wilting v. Progressive Cty. Mut. Ins. Co.*,
   227 F.3d 474 (5th Cir. 2000) ....................................................................... 8, 16

**STATUTES**

United States Code
   Title 11, § 1328 .................................................................................................. 9
   Title 15, § 1681b ........................................................................................*passim*
   Title 15, § 1681n ............................................................................................... 7

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
   Rule 56 ................................................................................................................ 5

Restatement (Second) of Torts § 282 ..................................................................... 7

11293.0677/11152996.2                                    v                         2:16-cv-00783-APG-CWH
                                                                    Ditech's Motion for Summary Judgment
4811-9600-0611, v. 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Lee Kamimura ("Kamimura") filed a Chapter 13 bankruptcy and secured an order discharging the debt owed on his junior mortgage. Kamimura's bankruptcy attorney obtained a copy of Kamimura's credit report and informed him that his loan servicer, Ditech Financial LLC ("Ditech"), conducted a soft credit pull on his account after discharge. Kamimura then filed this putative class action alleging Ditech lacked a permissible purpose to conduct a soft credit pull after the discharge in violation of the Fair Credit Reporting Act ("FCRA"). He alleges both negligent and willful violations of the FCRA.

As explained in Ditech's separate motion to amend the scheduling order, the Court should continue the dispositive motion deadline and defer deciding summary judgment until after plaintiff's motion for class certification is decided. The rule against one-way intervention prohibits the Court from making a merits ruling over the defendant's objection until after certification is decided and, if a class is certified, notice is mailed and the deadline to opt out expires. Ditech moves for summary judgment now only in an abundance of caution, as the Court has not yet decided whether to grant Ditech's request to continue the summary judgment deadline. If the Court grants the motion to amend the scheduling order, it need not read any further.

If the Court does reach the merits of this motion, summary judgment should be granted in Ditech's favor on Kamimura's claim that Ditech negligently violated the FCRA because Ditech had a permissible purpose for reviewing Kamimura's account post-discharge. The FCRA permits a creditor to conduct an account review for any legitimate business need. 15 U.S.C. §§ 1681b(a)(3)(A) & (F)(ii). Nothing in the FCRA's text prohibits a creditor from conducting an account review post-discharge or otherwise limits the circumstances in which a soft credit pull may be obtained. Nor does anything in the Bankruptcy Code suggest the debt ceases to exist after a debtor is relieved of personal liability. Applicable case law demonstrates there are many reasons why a creditor may conduct an account review post-discharge, including to obtain updated contact information and correspond with borrowers who, like Kamimura, continue to live in the property.

As Ditech had a permissible purpose for conducting the account review, summary judgment should be granted for that reason alone.

Even if the Court were to find that Ditech lacked a permissible purpose to review Kamimura's account, summary judgment should still be granted as Kamimura suffered no actual damage as a result of the soft credit pull, an essential element of a claim for negligent violation of the FCRA. Soft credit pulls have no impact on credit scores and are not visible to prospective creditors. Kamimura thus suffered no economic loss from Ditech reviewing his account. While Kamimura dubiously alleges he suffered emotional distress because of the account review, he fails to support that allegation with anything beyond his own conclusory statements. There is no evidence that Kamimura experienced any physical symptoms of emotional distress or sought medical treatment because of Ditech's soft credit pulls.

Summary judgment should also be granted on Kamimura's claim that Ditech willfully violated the FCRA. Even if this Court were to disagree with Ditech's interpretation of the statute, it is not an objectively unreasonable one. Courts interpreting section 1681b have agreed it is less than pellucid. The statute broadly permits account reviews for any legitimate business need without regard to whether the borrower has received a discharge in bankruptcy. No appellate court has endorsed Kamimura's theory, and, in fact, many district courts have rejected his argument and held the creditor may conduct an account review post-discharge. Given the ambiguous statutory language and the absence of any binding authority, Ditech's interpretation of section 1681b is not and could be objectively unreasonable.

For these reasons and others detailed below, the Court should grant Ditech's motion for summary judgment. Alternatively, the Court should enter partial summary judgment on either Kamimura's claim that Ditech negligently violated the FCRA or willfully violated the FCRA.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Soft Credit Pulls

Ditech obtains "soft credit pulls" on some of its accounts as part of its Credit Bureau Refresh ("CBR") process. *See* Declaration of Bradford Hardwick in Opposition to Plaintiffs' Motion for Class Certification, Dkt. no. 76 ("Hardwick Decl."), ¶¶ 2, 3; Declaration of Donald H.

1  Cram in Opposition to Plaintiffs' Motion for Class Certification, Dkt. no. 68 ("Cram Decl."),

2  Ex. B [36:9-20, 44:16-24].  These soft credit pulls contain the borrowers' personal and financial

3  information, such as addresses, telephone numbers, account credit limits, delinquency statuses,

4  and credit scores.  *Id.*

5         Unlike hard credit inquiries initiated by consumers, soft credit pulls do not affect a

6  borrower's credit score and are not used in credit scoring models.  *See* Cram Decl., Ex. B [61:22-

7  62:15]; Ex. C [Ulzheimer Report, pp. 7-8].  Also unlike hard credit inquiries, soft credit pulls are

8  visible only by consumers in private credit reports, not in public credit reports that creditors

9  evaluate in reviewing applications for credit.  *See id.*, Ex. C [p. 13]; Ex. D [7:13-8:7].

10        Ditech uses soft credit pull data to generate valuation models, guide collection strategies,

11  and obtain updated contact and personal information for borrowers.  *Id.*, Ex. B [77:18-78:21].

12  **B.    Ditech's Practices for Reviewing Accounts in Bankruptcy**

13        Ditech conducts the CBR process by ordering account reviews in batches, as opposed to

14  individual credit pulls.  Ditech does not include all the loans it services in the CBR process.

15  Instead, Ditech has created logic in its servicing databases to automatically exclude certain

16  categories of loans from being included in the CBR.  *See* Hardwick Decl., ¶ 4.

17        Ditech's practice is to request a soft credit pull only where it has a permissible purpose to

18  do so.  *See* Cram Decl., Ex. B [67:9-18]. Ditech believes it has a permissible purpose to conduct

19  account reviews after a borrower receives a bankruptcy discharge.  As a general rule, however,

20  Ditech's practice is to exclude loans on which the borrower has received a discharge from its CBR

21  process.  *Id.*, Ex. B [71:12-72:24].

22        Ditech uses a system called Latitude to track certain lower performing and charged off

23  loans.  *Id.*, Ex. B [26:11-14, 27:15-17].  After Latitude was launched, Ditech used a bankruptcy-

24  specific "Yes/No" code, also called a bankruptcy flag ("BKFLG"), to identify which accounts

25  should be included in the CBR process, and which should not.  Accounts that had an active or

26  discharged bankruptcy were marked with a "Y" in the BKFLG field and excluded from the CBR.

27  *See* Hardwick Decl., ¶ 9.

28

1    On March 16, 2014, Ditech changed Latitude's bankruptcy-specific BKFLG to a general

2   utility flag that included various other types of accounts.  Due to the system change, the BKFLG

3   field was inadvertently not populated with a "Y" for any accounts.  Thus, some accounts that

4   would have been closed under Ditech's general practice were left open and remained subject to

5   soft credit pulls.  *See* Hardwick Decl., ¶ 10.

6    Ditech discovered the issue in May 2016.  Ditech investigated and determined that the

7   system change to the BFKLG field had inadvertently caused some bankrupt accounts to be

8   included in the CBR process.  Ditech addressed the issue by revising the BKFLG code to

9   differentiate between accounts with active or discharged bankruptcies and those accounts with no

10   bankruptcy filing.  Since June 8, 2016, the vast majority of accounts in which the borrower has an

11   active bankruptcy or has received a discharge have been excluded from the CBR.  *See* Hardwick

12   Decl., ¶¶ 11, 12.

13   **C.      Facts Underlying Kamimura's Claim**

14    In May 2005, Kamimura obtained a home loan and home equity line of credit from

15   Countrywide to finance his purchase of real property in Las Vegas.  *See* Cram Decl., Ex. A [27:1-

16   25, 28:10-23].  The loan and HELOC were secured by a senior and junior deed of trust on the

17   property.

18    Kamimura filed a Chapter 13 bankruptcy petition in August 2010.  *See* Cram Decl., Ex. A

19   [22:3-23-7, Ex. 3]; *see also* Second Amended Complaint ("SAC"), ¶ 17.  Ditech acquired the

20   servicing rights to Kamimura's junior lien in September 2010.  Cram Decl., Ex. A [32:21-34:21,

21   Ex. 6], Ex. B [15:2-11]

22    In October 2010, Kamimura filed a motion in the bankruptcy to strip the junior lien off the

23   property.  *Id.*, Ex. A [31:18-32:9, Ex. 3].  On December 8, 2010, the bankruptcy court entered an

24   order granting the motion, stating that Ditech's "secured rights and/or lien-holder rights in the …

25   Property shall be terminated upon completion of the Debtor's Chapter 13."  *Id.*, Ex. A [32:21-

26   34:21, Ex. 6].

27    On April 21, 2014, the bankruptcy court entered a discharge order, relieving Kamimura of

28   personal liability on his unsecured debts, including Ditech's junior lien in the amount of

1   $61,907.02. *Id.*, Ex. A [42:15-42:25, Ex. 8]. The bankruptcy was closed three days later, on April

2   24, 2014. *Id.*, Ex. A [43:25-44:15, Ex. 3].

3       After the initial closure of Plaintiff's bankruptcy case,[1] Ditech obtained three soft credit

4   pulls on Plaintiff's account in June, September, and December 2014. *See* Kind Decl., Ex. A

5   [74:20-75:7].

6       In December 2014, Ditech transferred the servicing rights to the junior lien to another

7   servicer, Specialized Loan Servicing LLC. *Id.*, Ex. B [16:6-25]. Ditech did not obtain any soft

8   credit pulls thereafter.

9       Kamimura filed this action against Ditech in May 2016. Though Kamimura alleges Ditech

10  violated his privacy by conducting a soft credit pull after he received a discharge, Kamimura

11  himself does not regularly monitor his credit and does not know how he would obtain a copy of

12  his credit report. He learned Ditech performed a soft credit pull only after his attorney, who also

13  represented him in his bankruptcy and several other lawsuits, informed him of the fact. *See* Cram

14  Decl., Ex. A [67:24-68:14, 70:4-19, 89:19-90:6].

15      Before the soft credit pulls occurred, Kamimura has sought treatment from an

16  acupuncturist for anxiety. He has seen the acupuncturist "once or twice" since September 2014.

17  *See* Cram Decl., Ex. A [54:1-55:23, 86:2-87:2].

18              **III. SUMMARY JUDGMENT STANDARDS**

19      Summary judgment is appropriate if "there is no genuine issue as to any material fact and

20  the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a).

21      To meet its initial burden, "the moving party must either produce evidence negating an

22  essential element of the nonmoving party's claim or defense or show that the nonmoving party

23  does not have enough evidence of an essential element to carry its ultimate burden of persuasion at

24  trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

25

26  _____

[1] In March 2015, Kamimura re-opened his bankruptcy case to pursue a claim against SLS for
27  collection efforts relating to the loan. *Id.*, Ex. A [61:10-62:15]. Kamimura later dismissed his
    cases against SLS and his bankruptcy was closed for a second time on February 16, 2016. *Id.*
28

1    2000).  The moving party may thus bear its burden simply by "pointing out to the district court []

2    that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

3    *Catrett*, 477 U.S. 317, 325 (1986).

4          When the moving party meets its burden, the nonmoving party "may not rely on the mere

5    allegations in the pleadings in order to preclude summary judgment …[,]" but instead must

6    produce "significant probative evidence" supporting those allegations. *T.W. Elec. Serv. v. Pacific*

7    *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted).  "A '*scintilla* of

8    evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient

9    to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge*

10   *Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (*citing Anderson v. Liberty Lobby, Inc.*, 477

11   U.S. 242, 249-50 (1986)).  The nonmoving party "must produce specific evidence, through

12   affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on

13   which a reasonable fact finder could find in his favor. *Finn v. City of Boulder City*, No 2:14-cv-

14   01835-JAD-GWF, 2018 WL 473001, at *3 (D. Nev. Jan. 17, 2018).

15         The opposing party also may not create a triable issue by raising new theories not alleged

16   in the complaint. *See, e.g., Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989,

17   990-92 (9th Cir. 2006); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.

18   2006).  "[T]he necessary factual averments are required with respect to each material element of

19   the underlying legal theory.... Summary judgment is not a procedural second chance to flesh out

20   inadequate pleadings." *Wasco Products, Inc.*, 435 F.3d at 992 (citations omitted).

21   ### IV.  THE COURT SHOULD GRANT DITECH'S MOTION FOR
### SUMMARY JUDGMENT

22

23         Kamimura alleges a single count for violation of the FCRA, asserting that Ditech

24   negligently and willfully violated the FCRA by obtaining soft credit pulls on his account without a

25   permissible purpose after he received a discharge in bankruptcy. *See* SAC, ¶¶ 24-37, 62-64.

26         The FCRA provides that "[a] person shall not use or obtain a consumer report for any

27   purpose unless ... the consumer report is obtained for a purpose for which the consumer report is

28   authorized to be furnished under [15 U.S.C. § 1681b] ...." 15 U.S.C. § 1681b(f).  "[P]laintiff bears

1   the burden of proving that defendant acted without a permissible purpose." *Thao Pham v. Solace*

2   *Fin., LLC*, No. 12-C-02413 RMW, 2012 WL 5471160, at \*2 (N.D. Cal. Nov. 9, 2012).

3   The FCRA "creates a private right of action allowing injured consumers to recover 'any

4   actual damages' caused by negligent violations and both actual and punitive damages for willful

5   noncompliance." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001); 15 U.S.C. §§ 1681n(a), 1681o(a).

6   As shown below, the undisputed facts demonstrate that Ditech did not negligently or willfully

7   violated the FCRA.  Kamimura also has no evidence that he suffered any actual damage because

8   of the alleged violation, an essential element of his negligence theory.  Summary judgment should,

9   therefore, be entered in Ditech's favor.

10   **A.    Ditech Did Not Commit Any Negligent Violation of the FCRA**

11   The Court should grant Ditech summary judgment on Kamimura's claim that Ditech

12   negligently committed a violation of the FCRA.

13   **1.    Ditech Had A Permissible Purpose for Reviewing Kamimura's Account**

14   "The FCRA does not define what constitutes negligence.  However, under common law

15   principles, negligence refers to 'conduct which falls below the standard established by law for the

16   protection of others against unreasonable risk of harm.'" *Pintos v. Pac. Creditors Ass'n*, No. C

17   03-5471 CW, 2011 WL 3880411, at \*2 (N.D. Cal. Sept. 2, 2011) (quoting Restatement (Second)

18   of Torts § 282).  Nothing in FCRA evinces any intent to depart from the common law meaning of

19   negligence.  Thus, "[g]iving negligence its common law meaning, the proper inquiry in this case is

20   whether a reasonably prudent collection agency would have … obtained Plaintiff's consumer

21   credit report … [in light of] the FCRA and authority interpreting the statute at that time." *Pintos*,

22   2011 WL 3880411, at \*3.

23   That inquiry begins with the text of section 1681b itself.  "In order to resolve this issue of

24   statutory interpretation, we look first to the plain language of the statute, construing the provisions

25   of the entire law, including its object and policy, to ascertain the intent of Congress." *United*

26   *States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1141 (9th Cir.

27   2008) (citation and internal quotation marks omitted).

28

1    Section 1681b provides that a creditor has a permissible purpose to obtain a consumer

2  report when it "has a legitimate business need for the information to review an account to

3  determine whether the consumer continues to meet the terms of the account" or it "intends to use

4  the information in connection with a credit transaction involving the consumer on whom the

5  information is to be furnished and involving the . . . review . . . of an account of the consumer."

6  *See* 15 U.S.C. §§ 1681b(a)(3)(A), 1681b(a)(F)(ii).

7    Thus, under the plain language of the statute, a creditor has a permissible purpose to

8  conduct a soft credit pull to conduct a review of an account. As explained above, Kamimura

9  alleges that permissible purpose does not apply if the borrower has received a discharge in

10  bankruptcy.

11    Kamimura's interpretation of section 1681b is not supported by the statute's plain

12  language. Nothing in section 1681b suggests a creditor may not conduct an account review after a

13  borrower receives a discharge in bankruptcy. The statute speaks only to the "legitimate business

14  needs" of creditors like Ditech and "review" of the "account of the consumer." *See* 15 U.S.C.

15  §§ 1681b(a)(3)(A) & (F).

16    As courts have repeatedly recognized, "[n]either of the provisions upon which

17  [Kamimura] relies expressly distinguish[es] between closed and open accounts, *see* 15 U.S.C.

18  § 1681b(a)(3)(A), (F) ….'" *Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th

19  Cir. 2009); *see also Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1278 (N.D. Cal. 2014) (same).

20  Also, "neither the Act nor the FTC's commentary on the Act suggests that a report may only be

21  permissibly obtained during particular points in the parties' relationship." *Wilting v. Progressive*

22  *Cty. Mut. Ins. Co.*, 227 F.3d 474, 476 (5th Cir. 2000); *see also Kowall v. GMAC Mortg., LLC*, No.

23  11-15454, 2012 WL 884851, at *5 (E.D. Mich. Mar. 15, 2012).

24    Kamimura effectively asks the court to read into the statute an unstated requirement that

25  account reviews may not be conducted if the borrower has obtained a discharge. But in

26  interpreting a statute, the court should refrain from inserting language that was omitted unless the

27  statute's plain meaning is absurd. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1080-82

28

1   (9th Cir. 2005) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 537-38 124 S.Ct. 1023, 157

2   L.Ed.2d 1024 (2004)).

3       It is not absurd to read section 1681b as permitting account review inquiries post-

4   discharge.  The Bankruptcy Code itself contemplates that the account still exists post-discharge.

5   The Code provides for a discharge of the "debtor," not for a discharge of the debt.  11 U.S.C.

6   § 1328(a) ("court shall grant the debtor a discharge of all debts provided for by the plan or

7   disallowed under section 502 of this title…").

8       Also, a discharge does not eliminate the lien securing the debt, but instead relieves the

9   borrower only of personal liability for the debt.  *See Johnson v. Home State Bank*, 501 U.S. 78, 84

10  (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an

11  action against the debtor in personam—while leaving intact another—namely, an against the

12  debtor in rem."); *Star Phoenix Mining Co. v. West Bank One*, 147 F.3d 1145, 1147 n. 2 (9th Cir.

13  1998) (same).  Even after discharge, the account continues to exist, and a servicer may still have

14  obligations with respect to the borrower, the property, and the investor.

15      Servicers also continue to furnish information regarding discharged debtors to the

16  consumer reporting agencies post-discharge.  As Judge Jones found in dismissing a similar case

17  filed by Kamimura's counsel, "with exceptions not relevant here, Congress explicitly declined via

18  the FCRA to prevent the reporting of delinquencies as to discharged debts for seven years and

19  bankruptcies themselves for ten." *Abeyta v. Bank of Am.*, No. 215CV02320RCJNJK, 2016 WL

20  1298109, at *2 (D. Nev. Mar. 31, 2016).  In expressly permitting creditors to report debts to the

21  consumer reporting agencies post-discharge, Congress impliedly rejected Kamimura's argument

22  that the discharge extinguishes the account.

23      For these reasons, courts have repeatedly "held that a discharge does not, by itself, end the

24  credit relationship between a borrower and a lender." *Farrin v. Nationstar Mortg. LLC*, No. 15-

25  CV-102-LM, 2016 WL 6407841, at *8 (D.N.H. Oct. 28, 2016).  "Thus, rather than create a

26  limitation on access to Plaintiff's credit information, post-discharge, § 1681b(a)(3) provides broad

27  discretion for [Ditech's] access to 'soft pull' information for 'review or collection of an account'

28  or any other 'legitimate business need[.]'" *Vanaman v. Nationstar Mortg., LLC,* No.

11293.0677/11152996.2
4811-9600-0611, v. 1                                    9                    2:16-cv-00783-APG-CWH
Ditech's Motion for Summary Judgment

1  215CV00906KJDNJK, 2017 WL 1097189, at *3 (D. Nev. Mar. 22, 2017) (citing 15 U.S.C.

2  §§ 1681b(a)(3)(A), (F)).  A creditor may conduct an account review post-discharge for a variety of

3  reasons, including but not limited to verifying the borrower's contact information, tax and escrow

4  reporting, communicating with a borrower who remains in possession of the property, or recording

5  a reconveyance of a security instrument.  *See id.* at *8 (creditor had permissible purpose to

6  conduct account review to verify borrower's address); *Saumweber v. Green Tree Servicing, LLC*,

7  No. 13-CV-03628 SRN/SER, 2015 WL 2381131, at *3-5 (D. Minn. May 19, 2015) (holding that

8  post-discharge credit pull was not a FCRA violation where plaintiff remained in possession of

9  home); *Germain v. Bank of Am., N.A.*, No. 13-CV-676-BBC, 2014 WL 5802018, at *5-8 (W.D.

10  Wis. Nov. 7, 2014) (same).

11        Since Ditech had a permissible purpose for reviewing Kamimura's account, it is irrelevant

12  that the soft credit pulls were conducted inadvertently and contrary to Ditech's general policy.

13  "[C]ourts examining the FCRA have found that in cases where defendants have made a good faith

14  mistake in pulling a consumer report there is no violation of the FCRA."[2]  "'[T]he plain language

15  of the statute [15 U.S.C § 1681b(a)(3)] focuses on the *intent* of the party obtaining the consumer

16  report.'"  *Miller*, 2011 WL 4359977, at *3 (citation omitted).  So long as the defendant intended to

17

18  _____

19  [2] *Miller v. Rubin & Rothman, LLC*, No. CIV. 10-2198 MJD/JJK, 2011 WL 4359977, at *4 (D.
   Minn. Sept. 19, 2011) (citing cases); *see also Bickley v. Dish Network, LLC*, 751 F.3d 724, 732
20  (6th Cir. 2014) ("We reject the contention that a company, dealing with an imposter purporting to
   be the consumer, should be held liable when the company attempts in good-faith to verify the
21  consumer's identity and eligibility for commercial services."); *McNall v. Credit Bureau of
   Josephine Cty.*, 689 F. Supp. 2d 1265, 1273 (D. Or. 2010) ("even if defendant CBJC mistakenly
22  requested the credit report when it had plaintiffs' street address, plaintiffs offer no evidence that
   defendant's intent in requesting the credit report was for a purpose other than collecting a debt
23  which is a permissible purpose under section 1681b(a)(3)(A)"); *Beckstrom v. Direct Merch.'s
   Credit Card Bank*, No. CIV.04-1351 ADM/RLE, 2005 WL 1869107, at *3 (D. Minn. Aug. 5,
24  2005) (although the defendant later discovered that the account in question did not belong to the
   plaintiff, the defendant had a permissible purpose since it "had reason to believe that Plaintiff had
25  defaulted" on the account and pulled his credit report in relation to its collection efforts); *Kennedy
   v. Victoria's Secret Stores, Inc.*, No. CIV.A. 03-2691, 2004 WL 2186613, at *3 (E.D. La. Sept. 29,
26  2004) (defendant credit card company had a permissible purpose where it obtained the consumer
   report of an individual whom it mistakenly believed to be a customer).
27

28

1 use the report for a permissible purpose, it is immaterial that the report may have been obtained by

2 mistake.

3      *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 43 (E.D.N.Y. 2005) is

4 instructive. There, the bank conducted an account review inquiry on a closed account due to a

5 coding error that caused the account to be designated as open. Because the bank had a permissible

6 purpose for conducting the account review, it did not violate FCRA even though the review was

7 conducted by mistake. *Id.* at 42 ("Although the Bank's inquiries into Plaintiff's consumer report

8 were made in error, the court finds that they were not made with an impermissible purpose.")

9      Here, as in *Trikas*, Ditech inadvertently performed soft credit pulls on plaintiff's account

10 due to a coding error that resulted in the account being included in the credit bureau refresh policy.

11 Though the soft credit pulls were obtained in error, Ditech had a permissible purpose for

12 conducting the account review inquiries for the reasons stated above. A reasonably prudent

13 servicer could have reviewed Kamimura's account post-discharge. Ditech therefore did not act

14 negligently in conducting post-discharge reviews of Kamimura's account. *See, e.g., Crehin v.*

15 *ARS Nat. Servs.*, No. 8:13-CV-01497-SVW, 2014 WL 104073, at *2 (C.D. Cal. Jan. 9, 2014)

16 (defendant had permissible purpose in obtaining credit report to collect a debt even though

17 plaintiff alleged that the debt did not exist); *Myers v. Stoneleigh Recovery Assocs.*, No. CIV S-11-

18 1753 LKK, 2012 WL 1356752, at *5–6 (E.D. Cal. Apr. 18, 2012) (same).

19      Summary judgment should be granted on Kamimura's claim that Ditech negligently

20 violated the FCRA for that reason alone.

21      **2.**     **Kamimura Suffered No Actual Damages As a Result of the Soft Credit Pulls**

22      Even if plaintiff could raise a triable issue over whether Ditech lacked a permissible

23 purpose to obtain a soft credit pull, summary judgment should still be granted on the claim for

24 negligent violation of the FCRA as he has no evidence that he suffered actual damages because of

25 the alleged violation. "Without a causal relation between the violation of the statute and the loss

26 of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages' …" under the

27 FCRA. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *Banga v. First USA,*

28 *NA*, 29 F. Supp. 3d 1270, 1280 (N.D. Cal. 2014).

11293.0677/11152996.2        11        2:16-cv-00783-APG-CWH
Ditech's Motion for Summary Judgment
4811-9600-0611, v. 1

1    As this Court has previously recognized, soft credit pulls have no impact on the

2    consumer's credit score and are never visible to prospective creditors. *See Middleton v. CCB*

3    *Credit Servs., Inc.*, No. 2:12-CV-02012-APG, 2014 WL 3513386, at *1 (D. Nev. July 14, 2014)

4    (Gordon, J.) ("Defendant conducted a 'soft-pull' of Plaintiff's credit—an inquiry into Plaintiff's

5    credit information that does not affect the credit score—to verify information about the Plaintiff

6    and to ensure the Plaintiff was not in bankruptcy"). Thus, Kamimura plainly suffered no

7    economic damages because of Ditech conducting an account review inquiry. *See In re Ocwen*

8    *Loan Servicing LLC Litig.*, 240 F. Supp. 3d 1070, 1076 (D. Nev. 2017) (dismissing claim for

9    negligent violation of section 1681b based on failure to allege any damages caused by supposedly

10   impermissible soft credit pull); *Maldonado v. HSBC Mortg. Sys., Inc.*, No. 216CV00784JADVCF,

11   2017 WL 3496460, at *2 (D. Nev. Aug. 15, 2017) (same).

12   Attempting to avoid dismissal on the pleadings, Kamimura's amended complaint alleged

13   that he suffered emotional distress damages caused by Ditech's soft credit pull. SAC, ¶ 40. While

14   emotional distress damages can constitute actual damages under FCRA, "[a] plaintiff must support

15   a claim for damages based on emotional distress with something more than his or her own

16   conclusory allegations." *Smith v. One Nevada Credit Union*, No. 216CV02156GMNNJK, 2017

17   WL 2803169, at *5 (D. Nev. June 27, 2017) (citing *Myers v. Bennett Law Offices*, 238 F. Supp. 2d

18   1196, 1206 (D. Nev. 2002)); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603,

19   610 (7th Cir. 2005) (affirming grant of summary judgment on FCRA claim).

20   "[A] brief episode of frustration and unhappiness does not establish the sort of concrete

21   emotional distress that is required to constitute a genuine injury and actual damages." *Taylor v.*

22   *Tenant Tracker, Inc.*, 710 F.3d 824, 829 (8th Cir. 2013). "Where, as here, the plaintiff's own

23   testimony is his only evidence of emotional damages, 'he must explain the circumstances of his

24   injury in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the

25   case are so inherently degrading that it would be reasonable to infer that a person would suffer

26   emotional distress from the defendant's action.'" *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834

27   (7th Cir. 2004) (citation omitted), abrogated on a different ground by *Safeco Ins. Co. of Am. v.*

28   *Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).

1   Kamimura cannot show he suffered a wrong so inherently degrading that it would be

2   reasonable to infer he suffered emotional distress.  He was not even aware that Ditech had

3   obtained a soft credit pull on his account until after his attorneys pointed it out to him.  *See* Cram

4   Decl., Ex. A [67:24-68:14, 70:4-19, 89:19-90:6].  Kamimura offers only conclusory statements

5   that the supposedly "huge invasion of privacy" caused him to suffer "anxiety and a loss of sleep

6   and appetite."  Kamimura Decl., ¶¶ 7-8; Cram Decl., Ex. A [54:1-55:23, 74:13-75:15, 86:2-87:2,

7   95:1-96:2].  While Kamimura claims he was also treated by an acupuncturist, he was already

8   seeing the acupuncturist to treat anxiety long before the soft credit pulls occurred, and has seen the

9   acupuncturist only "once or twice" since September 2014.  *See* Cram Decl., Ex. A [54:1-55:23,

10  86:2-87:2].  Kamimura "cannot recover for harms that occurred prior to the [alleged] violation …"

11  of FCRA that he challenges.[3]

12  In short, "[t]here is no evidence that Plaintiff[] suffered any physical injury related to [his]

13  emotional distress or that [he was] treated for [his] emotional distress.  Rather, these conclusory

14  claims show only a 'brief episode of frustration and unhappiness' and are insufficient to support a

15  FCRA claim."  *Saumweber*, 2015 WL 2381131, at *7 (citation omitted) (granting summary

16  judgment on claim that plaintiff suffered emotional distress for alleged violation of section

17  1681b).

18  **B.      Ditech Did Not Commit Any Willful Violation of the FCRA**

19  Summary judgment should also be granted on Kamimura's claim that Ditech committed a

20  willful violation of the FCRA.  To establish a "willful" violation of the FCRA, a plaintiff must

21  demonstrate the violation was either "knowing" or "reckless."  *Safeco Ins. Co. of Am. v. Burr*, 551

22  U.S. 47, 57 (2007).

23  Kamimura has no evidence that Ditech knowingly violated FCRA.  As explained above,

24  nothing in FCRA expressly precludes a creditor from obtaining soft credit pulls after a debtor is

---

25

26  [3] *See Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 582 (D. Md. 2015), *aff'd*, 623 F. App'x
94 (4th Cir. 2015); *see also Abdelfattah v. Carrington Mortgage Servs. LLC*, No. C-12-04656-

27  RMW, 2013 WL 495358, at *4 (N.D. Cal. Feb. 7, 2013); *Fregoso v. Wells Fargo Dealer Servs.,
Inc.*, No. CV 11-10089 SJO AGRX, 2012 WL 4903291, at *3 (C.D. Cal. Oct. 16, 2012).

28

1   discharged. Even so, Ditech made a business decision not to conduct account reviews for

2   borrowers who are in active bankruptcies or received a discharge. Ditech maintained policies and

3   "change documents" expressly outlining the circumstances in which it will conduct account

4   inquiries on bankrupt accounts. *See* Cram Decl., Ex. B [66:5-22, 71:12-72:24, 96:20-97:8,

5   118:21-119:1]. While some account reviews were inadvertently conducted on Kamimura's

6   account notwithstanding that policy, those accidental reviews were, by definition, not intentional

7   or knowing violations of the FCRA.

8       Nor can Kamimura show that Ditech recklessly violated the FCRA. As *Safeco* explains,

9   recklessness is a high standard. It means taking an "action entailing an unjustifiably high risk of

10   harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68-69. "[A]

11   company subject to FCRA does not act in reckless disregard of it unless the action is not only a

12   violation under a reasonable reading of the statute's terms, but shows that the company ran a risk

13   of violating the law substantially greater than the risk associated with a reading that was merely

14   careless." *Id.* at 69.

15       To show willfulness, the plaintiff must prove that a defendant's efforts to comply with the

16   FCRA were "objectively unreasonable." *Id.* at 69. Thus, as with the negligence standard

17   discussed above, that Ditech mistakenly obtained the soft credit pulls contrary to its normal policy

18   is not indicative of recklessness or willfulness. "[E]vidence of subjective bad faith or intent of the

19   defendant is irrelevant when there is an objectively reasonable interpretation of the statute that

20   would allow the conduct in question." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d

21   Cir. 2012) (*quoting Safeco*, 551 U.S. at 70 n. 20, 127 S.Ct. 2201); *see also Levine*, 554 F.3d at

22   1319 ("*Safeco* makes clear that evidence of subjective bad faith cannot support 'a willfulness

23   finding ... when the company's reading of the statute is objectively reasonable."); *see also Noble v.*

24   *Nevada Checker Cab Corp.*, No. 215CV02322RCJVCF, 2016 WL 1298110, at *2 (D. Nev. Mar.

25   31, 2016) (same).

26       While willfulness is in some circumstances a question of fact, the *Safeco* test treats

27   willfulness as a question of law. *See Van Straaten v. Shell Oil Prod. Co. LLC*, 678 F.3d 486, 491

28   (7th Cir. 2012); *Kirchner v. Shred-it USA Inc.*, No. CIV. 2:14-1437 WBS, 2014 WL 6685210, at

1   \*2 (E.D. Cal. Nov. 25, 2014).  Therefore, "post-*Safeco* courts routinely grant summary judgment

2   on FCRA willful violation claims if the defendant company acted objectively reasonably in the

3   face of unclear statutory text and insufficient pertinent authoritative guidance."[4]

4          *Safeco* identified three objective indicia for lower courts to apply in determining whether a

5   defendant's reading of the statute is objectively unreasonable.  *See Fuges v. Sw. Fin. Servs., Ltd.*,

6   707 F.3d 241, 251 (3d Cir. 2012); *see also Hammer v. Sam's E., Inc.*, 754 F.3d 492, 502 (8th Cir.

7   2014).  First, a court considers whether the Act provides "clear guidance" as to the meaning of the

8   statutory language, *Fuges*, 707 F.3d at 251, or instead contains "less-than-pellucid statutory text."

9   *Safeco*, 551 U.S. at 70.  Second, a court considers whether the defendant's proposed interpretation

10  "had a 'foundation in the statutory text.'"  *Fuges*, 707 F.3d at 252 (quoting *Safeco*, 551 U.S. at 69-

11  70).  Third, a court considers whether the defendant was "interpreting the statute in the absence of

12  any contrary authority on the meaning" of the statute "because 'no court of appeals had spoken on

13  the issue, and no authoritative guidance has yet come from the FTC.'"  *Id.* (quoting *Safeco*, 551

14  U.S. at 70).  Consideration of these three factors in this case shows Ditech's interpretation of the

15  statute is not objectively unreasonable.

16         First, section 1681b does not provide "clear guidance" that account review inquiries are

17  prohibited post-discharge.  As shown above, "[c]ourts have found that the portion of the Act relied

18  upon by [Kamimura] to establish a claim, 15 U.S.C. § 1681b(a)(3)(A), is 'far from pellucid[.]'"

19  *Vanaman*,  2017 WL 1097189, at \*3 (citing *Levine*, 554 F.3d at 1318).  "[T]he text of the FCRA

20  does not distinguish between closed and open accounts." *Banga*, 29 F. Supp. 3d at 1278 (citing

21  15 U.S.C. § 1681b(a)(3)(A)).  Nor does the FCRA distinguish between accounts for which the

22  debtor is personally liable and those for which the debtor received a discharge in bankruptcy.

---

[4] *Fuges v. Sw. Fin. Servs., Ltd.*, No. 2:09-CV-00699, 2011 WL 5865961, at \*5 (E.D. Pa. Nov. 22, 2011), *aff'd*, 707 F.3d 241 (3d Cir. 2012); *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009-12 (10th Cir. 2011) (affirming grant of summary judgment on claim for willful violation of FCRA); *Banga v. Experian Info. Sols., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690, at \*6 (N.D. Cal. Sept. 30, 2013) (granting summary judgment on claim for violation of section 1681b); *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) (granting summary judgment on claim for willful violation of FCRA); *see also Scaffidi v. United Nissan*, No. CV-S-04-1366 PMPLRL, 2005 WL 3737892, at \*6 (D. Nev. Dec. 30, 2005).

1     Second, Ditech's reading of section 1681b "has a foundation in the statutory text." As

2   explained above, the statute permits a servicer to conduct an account review whenever it has a

3   "legitimate business need." *See* 15 U.S.C. §§ 1681b(a)(3)(A), 1681b(a)(F)(ii).  There are many

4   legitimate business reasons a creditor may conduct an account review post-discharge, including

5   obtaining updated contact information or communicating with a borrower holding over in the

6   property. *See, e.g., Vanaman*, 2017 WL 1097189, at *3; *Farrin*, 2016 WL 6407841, at *10.  As

7   section 1681b makes no exception for discharged borrowers, Ditech could have reasonably

8   interpreted the statute to permit account review post-discharge.

9     Third, "Plaintiff has pointed to no authority, circuit court or otherwise, demonstrating that

10   it is objectively unreasonable to interpret the FCRA as prohibiting a creditor from obtaining a

11   consumer's credit report after a consumer's account is closed." *Vanaman*, 2017 WL 1097189, at

12   *4; *accord Banga*, 29 F. Supp. 3d at 1278.  No Court of Appeals has held that creditors are

13   precluded from performing account review inquiries after the borrower has obtained a discharge.

14   To the contrary, the Courts of Appeals have held that that creditors may have a permissible

15   purpose to conduct account review inquiries even after an account has closed.

16     For example, the Eleventh Circuit held in *Levine* that it is not objectively unreasonable to

17   interpret the FCRA as permitting the sale of a credit report to a creditor for "account review"

18   purposes after the consumer has closed his account with that creditor. *Levine*, 554 F.3d at 1318-

19   19.

20     Similarly, in *Wilting*, 227 F.3d 474, the Fifth Circuit rejected the plaintiff's argument that

21   the FCRA "only allows a creditor to obtain a consumer credit report on 'existing accounts' and not

22   for previous accounts."   The Court held that nothing in FCRA's text or the FTC's commentary

23   suggested creditors were precluded from conducting account review inquiries after an account was

24   closed. *Id.*

25     That some district courts have endorsed Kamimura's theory is insufficient to show that

26   Ditech's interpretation is objective unreasonable under the *Safeco* standard. *See Long*, 671 F.3d at

27   377 ("Although Long argues that there was district court authority putting Hilfiger on notice that

28   its interpretation was incorrect, there was no guidance from the federal courts of appeal on this

1    issue."); *see also Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803 (7th Cir. 2010) (holding

2    there was no willful FCRA violation where "there has been no contrary opinion from a court of

3    appeals or federal agency suggesting that the company's understanding of the statute is wrong").

4    Also, as stated above, many courts in this district and elsewhere have disagreed with Kamimura's

5    theory and found that a creditor has a permissible purpose to obtain a credit report after a

6    bankruptcy discharge. *See, e.g., Vanaman*, 2017 WL 1097189, at *3; *Farrin*, 2016 WL 6407841,

7    at *10. Given the absence of any binding authority and the split in the district courts, Ditech's

8    interpretation of the statute cannot be objectively unreasonable under the *Safeco* standard.

> The Supreme Court has made clear that where there is support in the case law for more than one reasonable interpretation, a defendant cannot be liable for a willful violation under FCRA for adopting one of those interpretations:  "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.  Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been."

16   *Farrin*, 2016 WL 6407841, at *10 (*citing Safeco*, 551 U.S. at 70 n.20).

17         In short, all three *Safeco* factors indicate that Ditech's reading of the statute is not

18   objectively unreasonable.  Thus, even if the Court finds Ditech lacked a permissible purpose to

19   obtain the soft credit pulls on Kamimura's account, any violation was not willful.  Summary

20   judgment should therefore be granted on Kamimura's claim for willful violation of the FCRA.

21   *See, e.g., Vanaman,* 2017 WL 1097189, at *3; *Farrin,* 2016 WL 6407841, at *10; *Saumweber*,

22   2015 WL 2381131, at *6 ( "even if Plaintiffs' mortgage account with Defendant had been closed

23   in the bankruptcy proceedings, Defendant's reading of the FCRA was not unreasonable but rather,

24   as Plaintiffs' counsel noted multiple times at the hearing on this matter, was a mere 'technical'

25   violation. As such, Defendant's conduct did not involve an unjustifiably high risk of harm to

26   Plaintiffs.").

27

28

## V.  CONCLUSION

For the reasons stated above, the Court should grant Ditech's motion for summary judgment.  Alternatively, the Court should enter partial summary judgment in Ditech's favor on either Kamimura's claim that Ditech negligently violated the FCRA or willfully violated the FCRA.

DATED this 23rd day of April, 2018

SEVERSON & WERSON
A Professional Corporation


By    /s/Mary Kate Kamka
         JOHN B. SULLIVAN
         DONALD H. CRAM
         MARY KATE KAMKA
         LASZLO LADI
         One Embarcadero Center, Suite 2600
         San Francisco, California 94111
         Tel. (415) 398-3344

         Attorneys for Defendant Ditech Financial LLC
         formerly known as Green Tree Servicing LLC


McDONALD CARANO LLP


By   /s/Laura R. Jacobsen
         100 W. Liberty Street, 10th Floor
         P.O. Box 2670
         Reno, Nevada 89505
         Telephone: (775) 788-2000

         Attorneys for Defendant Ditech Financial LLC
         Formerly known as Green Tree Servicing LLC

1

## CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that

3   on the 23rd day of April, 2018, a true and correct copy of the foregoing **DEFENDANT DITECH**

4   **FINANCIAL LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE**

5   **ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** was electronically filed with the Clerk

6   of the Court by using CM/ECF service which will provide copies to all counsel of record

7

8   registered to receive CM/ECF notification.

9

10                          _/s/Carole Davis_____
                             An Employee of McDonald Carano Wilson LLP
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28