Abbas Kazerounian, Esq.
*Pro Hac Vice*
**KAZEROUNI LAW GROUP, APC**
Michael Kind, Esq.
Nevada Bar No. 13903
6069 South Fort Apache Road, Suite 100
Las Vegas, NV 89148
Phone: 800 400 6808
ak@kazlg.com
mkind@kazlg.com

David H. Krieger, Esq.
Nevada Bar No. 9086
**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff Lee C. Kamimura*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Lee C. Kamimura, *individually and on behalf of all others similarly situated*,<br><br>                    Plaintiff,<br><br>v.<br><br>Green Tree Services, LLC,<br><br>                    Defendant. | Case No. 2:16-cv-00783-APG-CWH<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## <u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Lee C. Kamimura ("Plaintiff"), individually and on behalf of the class, hereby moves this Court for an order granting summary judgment against Defendant Green Tree

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

1    Services, LLC ("Defendant") as to Plaintiff's and the class members' claims of

2    willful violations of the Fair Credit Reporting Act.

3         Summary judgment is proper on the grounds that Plaintiff's and the class

4    members' claims are meritorious and there are no triable issues as to any material

5    fact so Plaintiff and the class members are entitled to judgment as a matter of law.

6    This motion is based upon this Notice, the records and papers on file herein, the

7    accompanying Memorandum of Points and Authorities, declarations, exhibits and

8    such other evidence as may be presented at the hearing of this motion.

9

10         DATED this 23rd day of April 2018.

11

12                            **KAZEROUNI LAW GROUP, APC**

13         By:   /s/ Abbas Kazerounian

14                Abbas Kazerounian, Esq.

15                Michael Kind, Esq.

16                6069 South Fort Apache Road, Suite 100

17                Las Vegas, NV 89148

18                *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

## **Table of Contents**

I.    Introduction ................................................................................................4

II.   Statement of undisputed facts .....................................................................5

   A.   Background ...........................................................................................5

   B.   The Debt was discharged in bankruptcy and the lien was stripped off ........6

   C.   Defendant's Account Review Inquiries  ..................................................7

   D.   Defendant's Policies and Procedures  ....................................................8

   E.   Expert Opinions ...................................................................................9

      1.  Expert Evan Hendricks  ...................................................................9

      2.  Expert John Ulzheimer ..................................................................11

   F.   Procedural history .............................................................................13

VII.  Legal Standard .........................................................................................13

   A.   Summary Judgment ...........................................................................13

   B.   Account Review Inquiries under the Fair Credit Reporting Act ................14

III.  Argument .................................................................................................15

   A. Defendant obtained Plaintiff's and the class members' "consumer reports" from TransUnion, a "consumer reporting agency".......................................16

   B. Defendant lacked a Permissible Purpose under the FCRA ...........................17

   C. Defendant's conduct was willful ...............................................................20

   VI.  Conclusion ...............................................................................................22

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff respectfully requests that this Court rule on this motion only after the class is certified and the class members receive notice.[1] *See Yeoman v. Ikea U.S.A. W., Inc.*, No. 11cv701-WQH (BGS), 2014 U.S. Dist. LEXIS 37749, at \*17-18 (S.D. Cal. Mar. 20, 2014). Given the deadline to file dispositive motions, this motion is brought on behalf of Plaintiff and the entire class, should this Court grant Plaintiff's motion to certify the class. ECF No. 59.

## I.   Introduction

Summary judgment is appropriate against Defendant since no genuine issues of material fact exist as to Plaintiff's and the class members' claims under 15 U.S.C. § 1681b (the "FCRA" or the "Act"). Plaintiff requests that this Court enter summary judgment against Defendant, with statutory punitive damages to be decided by the jury.

During the four years Defendant "serviced" Plaintiff's debt, Defendant did two things: it sent one welcome letter and one goodbye letter. Welcome Letter, Kind Dec., Ex. 2. Transfer Letter, *Id.*, Ex. 3; Hardwick Dep., *Id.* at Ex. 1, p. 34:13-35:8. The debt was in bankruptcy and charged off and "there was nothing for us to do." *See Id.* The account was merely "housed" in Defendant's systems and "there was no account activity." *Id.* at 43:2-14.

After the lien was striped off in Plaintiff's bankruptcy and discharged, in April 2014, Defendant continued to periodically pull Plaintiff's credit reports on June 11, 2014, September 3, 2014 and December 19, 2014. Resp. to Interrog., *Id.*, Ex. 4, No. 13. Notably, the December 2014 account review was after Defendant already transferred the account to another servicer. *See* Transfer Letter, *Id.*, Ex. 3 (dated November 24, 2014).

After a debt has been discharged in bankruptcy, the creditor no longer has a permissible purpose to access a consumer's credit report. *E.g.*, *Smith v. One Nev.*

---

[1] Plaintiff's motion for class certification has been fully briefed. ECF Nos. 59, 66, 75.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

*Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8-9 (D. Nev. June 27, 2017); *Maldonado v. HSBC Mortg. Sys.*, No. 2:16-cv-00784-JAD-VCF, 2017 U.S. Dist. LEXIS 129404, at *5 (D. Nev. Aug. 15, 2017). At deposition, Defendant admitted that there would be no permissible purpose when a debt is discharged in bankruptcy and the collateral is no longer secured. Hardwick Dep., Kind Dec., Ex. 1, p. 72:6-24. Defendant simply had no legitimate business need for Plaintiff's or the class members' credit information. *See* Expert Report, Hendricks Dec., Ex. A, p. 7. Even Defendant's expert declined to opine that Defendant had a legitimate business need. Ulzheimer Dep., *Id.*, Ex. 7, pp. 118:17-119:11; 79, 23:24; p. 97:9-15; 98:19-25; 111:5-18; 98:10-100:4.

Defendant's conduct was reckless since it had no policies or procedures in place relating to its account review inquiries. Hardwick Dep., Ex. 1, p. 118:16-119-1. Mr. Hendricks' *unrebutted* expert opinion is that Defendant disregarded the industry's long standing, well known standards. Expert Report, Hendricks Dec., Ex. A, p. 2. Defendant failed to maintain adequate policies, procedures or practices in place to prevent improper account reviews. *Id.* Defendant received notices relating to Plaintiff's bankruptcy, and knew the account was discharged when it continued to access his consumer reports. Hardwick Dep., *Id.*, Ex. 1, p. 32:2-22; 41:1-6; 47:21-23.

No genuine issues of material fact exist and Plaintiff and the class members respectfully request that this Court grant summary judgment in their favor, with statutory and punitive damages to be determined at trial.

## II.   Statement of undisputed facts

### A.   Background

Plaintiff filed for Chapter 13 Bankruptcy in August of 2010. *See generally* Bankruptcy Docket, Kind Dec., Ex. 10. A month after filing his bankruptcy, Defendant started to service Plaintiff's junior lien, previously serviced by BAC

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

Home Loans Servicing, LP (the "Debt").[2] Welcome Letter, *Id.*, Ex. 2. Defendant sent a "welcome letter" to Plaintiff on September 16, 2010. *Id.*[3] On November 24, 2014—a few months after Plaintiff's April 2014 bankruptcy discharge—Defendant sent a "goodbye letter" to Plaintiff. Transfer Letter, *Id.*, Ex. 3.

In the approximately four years between the "welcome" and "goodbye" letters, Defendant did nothing on the account:

> Q. Besides the welcome letter and the goodbye letter, it doesn't seem like Green Tree tried to contact Mr. Kamimura?
> A. Yes, that's correct.
> …
> Q. So what was Green Tree doing with this account? I mean, they got it; four years later they transferred it. What was the point of holding this account?
> A. So accounts are transferred to us in bulk. I — based on what I'm seeing here, it appears to me that the determination was made that the account was in bankruptcy. It had been previously charged off. I think it was acquired as charge-off -- as a charge-off account, and I think there was nothing for us to do.

Hardwick Dep., Kind Dec., Ex. A, p. 34:13-35:8. In other words, Defendant received Plaintiff's account and four years later it transferred the account to another company. *Id.* at pp. 34:25-35:8. As Defendant explained in deposition, Plaintiff's account was in bankruptcy and "there was nothing for us to do." *Id.*

**B.   The Debt was discharged in bankruptcy and the lien was stripped off**

Defendant received notice of Plaintiff's bankruptcy and filed a Proof of Claim relating to the underlying mortgage debt, which was "stripped off" in the bankruptcy. Bankruptcy Strip Off Order, *Id.*, Ex. 9 ("Green Tree Servicing, LLC

---

[2] The Debt was not the primary mortgage on Plaintiff's home. It was a secondary mortgage, a "junior lien."

[3] Plaintiff does not recall receiving any communications from Defendant. Plaintiff Dec. ¶ 4. For the purpose of this motion, Plaintiff does not dispute that Defendant sent the "welcome letter" and the "goodbye letter."

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

[]'s claim shall be treated as an "unsecured" claim.") Proof of Claim, *Id.*, Ex. A, p. 15.

Plaintiff received a Bankruptcy discharge on April 21, 2014. Discharge Order, Kind Dec., Ex. 8. The result was that any debt to Defendant had been discharged and Defendant no longer held any collateral. *Id.* In other words, Defendant could no longer collect from Plaintiff personally and could no longer collect on any collateral. Like Defendant said, "there was nothing for us to do." Hardwick Dep., Kind Dec., Ex. A, p. 34:13-35:8.

## C.  Defendant's Account Review Inquiries

After Plaintiff's April 21, 2014 bankruptcy discharge, Defendant conducted three credit inquiries to Trans Union relating to Plaintiff on June 11, 2014, September 3, 2014 and December 19, 2014.[4] Resp. to Interrog., Kind Dec., Ex. 4, No. 13; Credit Report, *Id.*, Ex. 5, p. 6 of 7.[5] Defendant states that these inquiries were conducted for "account review" purposes. *Id.*

Defendant conducted periodic account review "batch" inquiries, containing hundreds of thousands of consumer reports. Hardwick Dep., *Id.*, Ex. 1, p. 80:18:21 ("I don't know the exact number, but I would say it's probably in the hundreds of thousands."). Defendant refers to these inquiries as "credit refreshes" *Id.* at p.

---

[4] This final account review inquiry occurred *after* Defendant already transferred the account to another servicer and Defendant was no longer even servicing the account. *See* Transfer Letter, Kind Dec., Ex. 3 (dated November 24, 2014).

[5] There contains two nonmaterial discrepancies in Plaintiff's personal credit report. First the dates on Plaintiff's consumer report, Kind Dec., Ex. 5, appear to be the date Defendant *requested* the consumer reports, although it took a few days for Trans Union to respond. *See* Hardwick Dep., p. 103:8-15.

Second, the June and December inquiries appear under "promotional inquiries" on Plaintiff's personal credit report but Defendant clarified that these were in fact account review inquiries. Hardwick Dep., p. 99:17-23 ("all of the soft pulls were part of the same refresh process. . . . I don't know why TransUnion has labeled them as promotional versus account review.").

83:16-20 ("The information that we're talking about here from soft pull credit refreshes is not something that is in a user friendly format. It's something that goes into a table out there on a database, and is then there for use in the scoring models and things like that."). Plaintiff does not dispute that Defendant's account review inquiries were "soft pull" inquiries, meaning that the inquiries are not visible to any potential creditors, and do not affect his credit score.

When Plaintiff learned of Defendant's account review inquiries, he felt that this was an invasion of his privacy. Kamimura Dec., ¶¶ 6-7. *Id.* Plaintiff's feelings on privacy are generally similar to the ordinary consumer. *Id.* He tries to protect his privacy as best he can, shreds sensitive documents, and the like. *Id.*

### D.   Defendant's Policies and Procedures

Defendant had the mechanism to exclude certain consumers from its account review inquiries.

> There are -- there are things that are coded as exclusions to that process. There are -- so I mean -- if it was determined that some population of accounts didn't need to be part of that, then it would be written into the code as something that needed to be excluded.

Hardwick Dep., Kind Dec., Ex. 1, p. 85:1-5.

Defendant, however, admits that it had no policies or procedures in place relating specifically to account review inquiries.

> Q. Do you know of any policies, procedures, manuals, instructions, or similar materials that exist regarding account review inquiries that were not produced in this case?
> A. No.
> Q There's no specific policies and procedures about the refresher system, right?
> A That's correct. The policies and procedures related to the -- you know, the individual hard pulls, and then these change documents or design documents that's what's in place for the refresh process.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

*Id.* at pp. 118:16-119-1. Defendant's "change documents or design documents"—Defendant's codes for inclusion or exclusion of accounts on the batch account reviews—failed to exclude Plaintiff from the account review inquiries, even though his account was discharged in bankruptcy. *See* Expert Report, Hendricks Dec., Ex. A, p. 2.

### E.   Expert Opinions

Plaintiff's expert, Evan Hendricks, specifically addresses the central issue in this case: according the industry standards, it is improper to pull a consumer report for account review purposes when the account is discharged in bankruptcy and has a $0 balance. Expert Report, Hendricks Dec., Ex. A, pp. 4-8.

On the other hand, Defendant's expert, John Ulzheimer, takes no position on if there is a permissible purpose in such cases, like this one. Ulzheimer Dep., Kind Dec., Ex. 7, pp. 75:13-18; 78:23-79:2. Mr. Ulzheimer's opinion is limited to whether an "account" exists following a bankruptcy discharge, as discussed below. He takes no opinion if there is a permissible purpose in connection with that account.

### 1.  Expert Evan Hendricks

"Mr. Hendricks . . . is unquestionably qualified to testify on the subjects of credit reporting and consumer fraud. . . . Mr. Hendricks has been qualified as an expert witness in numerous cases involving those subjects." *Gold v. Midland Credit Mgmt.*, 82 F. Supp. 3d 1064, 1068 (N.D. Cal. 2015);[6] Expert Report, Hendricks Dec., Ex. A, pp. 14-32 (detailing 33 years of experience with credit reporting and consumer privacy issues).

Mr. Hendricks opines, based on the industry standards and his knowledge

---

[6] Mr. Hendricks has been admitted to provide his expert testimony on numerous credit reporting and privacy-related issues. *E.g.*, *Zabriskie v. Fannie Mae*, No. CV-13-02260-PHX-SRB, 2016 U.S. Dist. LEXIS 90122, at *6 (D. Ariz. Apr. 22, 2016); *Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 U.S. Dist. LEXIS 151064, at *11 (D. Ariz. Nov. 6, 2015); *Drew v. Equifax Info. Servs., LLC*, No. C 07-00726 SI, 2010 U.S. Dist. LEXIS 131643, at *18 (N.D. Cal. Dec. 3, 2010).

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

and expertise in the consumer reporting industry, that Defendant was not justified in accessing Plaintiff's consumer reports after the account was discharged in bankruptcy and there was a zero balance. *Id.* at p. 1.

Mr. Hendricks also opines that Defendant received notice that it could not conduct an account review from the industry standards, FTC Staff Opinions and court cases. *Id.* at p. 7. In Hendricks' experience, the Subscriber Agreements (the agreements between Defendant and Trans Union) specifies that Defendant was not allowed to pull a consumer report for account review purposes on a closed account where no balance is owing. *Id.* The Consumer Data Industry, the trade industry association for the credit reporting industry also refers to accounts as "opened accounts" or "existing accounts," thereby excluding closed or inactive accounts. *Id.* The Federal Trade Commission ("FTC") Staff opinions, as early as almost 20 years ago made clear that "'review' of an account [under the FCRA] referes to an existing (i.e., open or current) account." *Id.* at pp. 5-6. The FTC further said that "Because there no longer exists any account to 'review' and the consumer is not applying for credit, the FCRA provides no permissible purpose for the creditor to receive a consumer report from a CRA." *See generally Id.* at pp. 5-7. Thus, Mr. Hendricks concludes that Defendant had ample notice from the FTC and the industry standards that it may not access Plaintiff's consumer reports after the account had a $0 balance. *Id.*

Mr. Hendricks opined that Defendant disregarded the industry's long standing, well known standards, because Defendant did not have adequate policies, procedures or practices in place to prevent the improper account reviews. *Id.* at p. 2. Hendricks therefore concluded, based on Defendant's lack of policies, procedures and practices and the multiple notices and well known industry standards, that Defendant's actions were reckless. *Id.* at p. 9. Defendant failed to have adequate mechanisms in place to prevent impermissible access and review of consumer reports for consumers whose accounts were discharged in bankruptcy. *Id.* at p. 2.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

Hendricks further detailed the relevant privacy history and standards. *Id.* at p. 9-13. He stated that impermissible credit pulls are one of the most egregious forms of invasion of privacy because it means the violator is accessing data which was supposed to remain confidential and which was never supposed to be obtained. *Id.* at p. 12.

### 2. Expert John Ulzheimer

On the other hand, Mr. Ulzheimer took no position as to the industry standards on accessing consumer reports after a bankruptcy discharge where the debt is not secured by collateral. Ulzheimer Dep., Kind Dec., Ex. 7, p. 78:23-79:2. That issue was not something that is in his normal expertise. *Id.*

> I don't know what the industry standard is regarding pulling credit reports for consumers that were discharged in bankruptcy and collateral is not secured any longer, so I don't know if that's -- I don't know if that's consistent or inconsistent with industry standard.

*Id.* at p. 75:13-18.

Notably, Mr. Ulzheimer declined to opine that Ditech had a permissible purpose in accessing Plaintiff's consumer reports. *See Id.*; p. 118:17-119:11; p. 79, 23:24 ("I don't know what their specific reason was for requesting Mr. Kamimura's credit report."); p. 97:9-15 ("But as far as the current business relationship, other than the fact that there is a former account, I don't know what the current business relationship would be.") p. 98:19-25; p. 111:5-18; 98:10-100:4 (there was no relationships other than the existence of an account and the credit reporting).

Mr. Ulzheimer agreed that Defendant would have needed "a legitimate business need" to conduct an account review inquiry. *Id.* at p. 116:22-23 ("the language in the act says that there has to be a legitimate business need."); *see* 15 U.S.C. § 1681b(a)(3)(F). Nevertheless, Mr. Ulzheimer could not give his opinion as to what that legitimate business need was, as discussed above.

While it cannot be disputed that "account reviews" are only permissible to determine whether the consumer "continues to meet the terms of the account," 15

U.S.C. § 1681b(a)(3)(F)(ii), Mr. Ulzheimer could not identify what the terms of the account were. *Id.* at p. 69:2-4 ("other than the balance being zero, I don't know what the terms of Mr. Kamimura's HELOC were at that time"); p. 71:14-23; p. 70:21-23 ("I can't off the top of my head think of anything that the consumer can do to violate the terms of the account.").

Mr. Ulzheimer gives no opinion as to emotional distress or privacy harms. *Id.* at pp. 82: 24-83-1; 84:2-9; p. 125:4-5.

Although Mr. Ulzheimer's opinion is that Defendant has relevant policies and procedures, he did not consider Defendant's testimony that those policies apply only to individual inquiries, not account review inquiries. *Id.* at p. 107:2-16; 109: 1-6; *see* Hardwick Dep., Kind Dec., Ex. 1, pp. 118:16-119-1.

In short, Mr. Ulzheimer's testimony is not helpful because he makes no opinion on any relevant issues. His only opinion is that an "account" is a collection of data, i.e., a borrower and a lender, a name, social security number and the like. *Id.* at p. 32-33. An "account," according to Mr. Ulzheimer, includes "inactive or closed accounts." *Id.* at p. 35. "[A] paid-off and closed account" is still an account. *Id.* at 39:24-40. He opined that it was "irrelevant" whether it was "closed, open, paid off, not paid off, in default, paid on time," *Id.* at p. 47:13-22, or even if the consumer was dead. *Id.* at pp. 60:13-61-1.[7] Mr. Ulzheimer's testimony was, of course, absurd and contrary to caselaw, discussed below. Even he admitted that in that scenario, where the account was closed, the consumer would have no way to request for the account to be purged—and to stop the account reviews—years after the account was closed. *Id.* at p. 64:6-7.

---

[7] Ulzheimer testified that this extreme view—that an "account" under the FCRA exists forever—was never published in any books, articles, or blogs. *Id.* at pp. 47:5-19:13. Instead, his opinion was based on his understanding of the FCRA, as opposed to his expert understanding of the industry. *Id.*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

1

### F.   Procedural history

2    Plaintiff filed his original Complaint on April 8, 2016. ECF No. 1. Plaintiff

3    filed his Second Amended Complaint on July 15, 2016. ECF No. 16. Defendant

4    filed its Answer on August 19, 2016. ECF No. 21.

5    Written discovery was exchanged by both sides; Plaintiff deposed Defendant

6    and Defendant deposed Plaintiff. *See* Hardwick Dep., Kind Dec., Ex. 1. The Parties

7    disclosed experts and took expert depositions. Ulzheimer Dep., *Id.*, Ex. 7.

8    Discovery closed on February 21, 2018. ECF 48.

9    On March 7, 2018, Plaintiff filed his motion to certify the class. ECF No. 59.

10   Defendant responded and Plaintiff replied. ECF Nos. 66, 75.

11   ## VII. Legal Standard

12   ### A.   Summary Judgment

13   Summary judgment is appropriate where the admissible evidence shows that

14   "there is no genuine issue as to any material fact and that the moving party is

15   entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material issue of

16   fact is one that affects the outcome of the litigation and requires a trial to resolve

17   the differing versions of the truth. *Kuhn v. Account Control Technology, Inc.*, 865 F.

18   Supp. 1443, 1447 (D. Nev. October 7, 1994). The moving party has the initial

19   burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H.*

20   *Kress & Co.*, U.S. 398 U.S. 144 (1970). If the party seeking summary judgment

21   meets this burden, the burden shifts to the nonmoving party, and summary

22   judgment will be granted "unless there is sufficient evidence favoring the

23   nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty*

24   *Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Questions of

25   reasonableness are "appropriate for determination on [a] motion for summary

26   judgment when only one conclusion about the conduct's reasonableness is possible

27   there is no issue for trial." *In re Software Toolworks Inc. v. Painewebber Inc.*, 50 F.

28   3d 615, 622 (9th Cir. 1995) (quoting *West v. State Farm Fire & Casualty Co.*, 868 F.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

2d 348, 351 (9th Cir. 1989) (internal alterations omitted)).

**B.    Account Review Inquiries under the Fair Credit Reporting Act**

Caselaw in this District has recognized that account review inquiries are only permitted on active accounts.

> The FCRA is clear that account review inquiries are permissible to determine whether the consumer <u>continues</u> to meet the terms of the account. 15 U.S.C. § 1681b(a)(3). The operative word in this provision is "continues," which indicates Congress recognized that once an individual terminated her relationship with a lender it was no longer permissible for the lender to access the account—precisely because the lender would have no reason for doing so. Given that the FCRA was enacted specifically to combat unnecessary and unwanted invasions of consumer privacy and maintain consumer confidentiality in the credit bureau industry, Congress enumerated and clearly established specific permissible purposes for a reason. By restricting such improper credit inquiries, Congress recognized the concrete harm that is caused by such inquiries. Just as § 1681b(b)(2)(A)'s disclosure requirement "creates a right to privacy" and results in "concrete injury" when violated, credit inquiries that exceed the scope of § 1681b(a)(3)—as alleged here—invade a plaintiff's right to privacy.

*Smith*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8-9 (emphasis in original) (quoting *In re Ocwen Loan Servicing LLC Litig.*, 240 F. Supp. 3d 1070, 1076 (D. Nev. 2017)).

After a debt has been discharged in bankruptcy, the creditor no longer has a permissible purpose to review the account. *E.g.*, *Smith*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8-9; *Maldonado*, No. 2:16-cv-00784-JAD-VCF, 2017 U.S. Dist. LEXIS 129404, at *5; *see also In re Ocwen Loan Servicing*, 240 F. Supp. 3d at 1076; *Goodby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008) (finding after the plaintiff's debt had been discharged in bankruptcy, "[t]here is nothing in the record indicating that the account review was obtained to either provide a benefit to Plaintiff or to collect a pre-existing debt," denying the defendant's motion for summary judgment); *Barton v. Ocwen Loan*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

*Servicing LLC*, No. 12-162 (MJD/JJG), 2013 U.S. Dist. LEXIS 153276, at *11-12 (D. Minn. Oct. 25, 2013) ("If Ocwen was informed that the debt had been discharged . . . Ocwen would not have had a permissible purpose to pull her report."); *Germain v. Bank of Am., N.A.*, No. 13-cv-676-bbc, 2014 U.S. Dist. LEXIS 45165, at *9 (W.D. Wis. Apr. 2, 2014) ("[The] plaintiffs have alleged that defendant did not have a legitimate reason for doing so once they had discharged their debts with defendant. These allegations are sufficient to state a claim under the Fair Credit Reporting Act."); *See also Martin v. Asset Acceptance, L.L.C.*, 2012 WL 3042524 (N.D. Ill. July 25, 2012) (denying dismissal where defendant obtained detailed credit information about plaintiff after debt had been paid in order to develop a predictive model to evaluate consumer credit information received and used); *Pulliam v. Am. Express Travel Related Services Co.*, 2009 WL 1586012 (N.D. Ill. June 4, 2009) (no permissible purpose to access consumer report of closed account after consumer had submitted payment pursuant to a settlement agreement); *Fed. Trade Comm'n v. Citigroup Inc.*, 239 F. Supp. 2d 1302 (N.D. Ga. 2001) (denying motion to dismiss allegations that associates obtained consumer reports to solicit additional transactions).

## III. Argument

To prove a claim for willful violation of section 1681b, Plaintiff and the class members must prove that: (1) Defendants obtained a "consumer report" from a "consumer reporting agency," (2) Defendants obtained the report without a permissible purpose, and (3) Defendant acted willfully. *See*, *e.g.*, *Amit Mahajan v. Sangeeta Kumar*, No. CV F 06-1728 AWI SMS, 2008 U.S. Dist. LEXIS 120687, at *21 (E.D. Cal. May 27, 2008) (citing *Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196, 1201 (D. Nev. 2002)); *Shepherd-Salgado v. Tyndall Fed. Credit Union*, No. 11-0427-WS-B, 2011 U.S. Dist. LEXIS 129128, at *12 (S.D. Ala. Nov. 7, 2011). No genuine issues of material fact exists as to Plaintiff's and the class members' claims and this Court should therefore enter summary judgment against Defendant.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

**A. Defendant obtained Plaintiff's and the class members' "consumer reports" from TransUnion, a "consumer reporting agency"**

There can be no dispute that the credit reports were from a "consumer reporting agency," because Defendant accessed Plaintiff's and the class members' reports from Trans Union. "Trans Union is a "consumer reporting agency" . . . within the meaning of the FCRA." *Karmolinski v. Equifax Info. Servs. LLC*, No. 04-1448-AA, 2007 U.S. Dist. LEXIS 64511, at *8 (D. Or. Aug. 28, 2007); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 839 (N.D. Ill. 2005). Here, Defendant accessed Plaintiff's consumer reports from Trans Union. Credit Report, Kind Dec., Ex. 5; Account Review Results, *Id.*, Ex. 6; *see also* Hardwick Dep., *Id.*, Ex. 1, p. 101:21-22 ("This is the data that we obtained from TransUnion on Mr. Kamimura on the soft pull refreshes"). Thus the reports were obtained from a "consumer reporting agency."

There is also no question that the reports were "consumer reports," under the FCRA. "Consumer report," commonly referred to as a "credit report" is defined under 15 U.S.C. § 1681a(d)(1) and includes

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used <u>or expected to be used</u> or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [the statute].

15 U.S.C. § 1681a(d) (emphasis added); *Syed v. M-I, Ltd. Liab. Co.*, 853 F.3d 492, 496 (9th Cir. 2017). "In order for § 1681b(3) to be meaningful, "consumer report" must be interpreted to mean any report made by a credit reporting agency of information *that could be used* for one of the purposes enumerated in § 1681a. Only

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

then can § 1681b be given the meaning Congress intended." *Belshaw v. Credit Bureau of Prescott*, 392 F. Supp. 1356, 1359-60 (D. Ariz. 1975) (emphasis in original). Defendant cannot escape liability by arguing that the reports were not "consumer reports" because they were not accessed for a permissible purpose. *See Id.*

Defendant accessed Plaintiff's and the class members' reports from Trans Union, a consumer reporting agency. Credit Report, Kind Dec., Ex. 5; Account Review Results, *Id.*, Ex. 6; *see also* Hardwick Dep., *Id.*, Ex. 1, p. 101:21-22. Defendant accessed numerous fields of Plaintiff's financial information, including (but not limited to), his FICO credit scores, Vantage credit scores, details relating to balances, past due balances, delinquencies, auto loans, bankcards, department store cards, various debt ratios, credit inquiries, as well as public records, foreclosures, and bankruptcy. *See generally* Account Review Results, *Id.*, Ex. 6.[8] Therefore no genuine issue of material fact exists as to whether Defendant accessed "consumer reports."

**B. Defendant lacked a Permissible Purpose under the FCRA**

It is unlawful for a person to access a consumer report unless it is obtained for one of the reasons enumerated in section 1681b. 15 U.S.C. § 1681b(a); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 695 (10th Cir. 1980). At issue in this case is whether Defendant had a permissible purpose under section 1681b(3)(F)(ii). Resp. to Interrog., Kind Dec., Ex. 4, p. 12, No. 13 (the pulls were for "account

---

[8] Defendant received *updated* information on these credit report items, including updated credit scores, each time it accessed Plaintiff's report. *See Id.* Defendant cannot therefore argue that Plaintiff was not harmed since Defendant already had Plaintiff's information. Defendant was not entitled to Plaintiff's updated consumer reports under section 1681b and invaded Plaintiff's privacy.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

review" purposes).[9] It did not.

Under § 1681b(3)(F)(ii), a user may access a consumer report if it "has a legitimate business need for the information . . . to review an account to determine whether the consumer continues to meet the terms of the account." Here, (1) Defendant had no legitimate business need for the information, (2) Defendant had no account associated with Plaintiff or the class members and (3) there were no terms for which to determine whether Plaintiff and the class members continued to meet the terms.

First, Defendant had no legitimate business need. A month after filing his bankruptcy, Defendant began to service Plaintiff's junior lien. Defendant sent Plaintiff a welcome letter and a goodbye letter four years later. Welcome Letter, Kind Dec., Ex. 2. Transfer Letter, *Id.*, Ex. 3. Defendant did nothing else on the account because "there was nothing for us to do." Hardwick Dep., *Id.*, Ex. 1, p. 34:13-35:8. After Plaintiff's bankruptcy discharge, Defendant continued to access Plaintiff's credit reports, against the standards of the credit industry. Expert Report, Hendricks Dec., Ex. A, p. 7. Even Mr. Ulzheimer refused to opine that Defendant had a legitimate business need. Ulzheimer Dep., Kind Dec., Ex. 7, pp. 118:17-119:11; 79, 23:24; p. 97:9-15 ("But as far as the current business relationship, other than the fact that there is a former account, I don't know what the current business relationship would be."); 98:19-25; 111:5-18; 98:10-100:4. At deposition, Defendant admitted that the account was merely "housed" in its systems and "there was no account activity." Harwick Dep., *Id.*, Ex. 1, p. 43:2-14; *see also Id.* at pp. 70:21-71:7 (Defendant never reviewed Plaintiff's individual data).

---

[9] The other enumerated permissible purposes do not apply in this case since there is no grand jury proceeding, instructions by Plaintiff, new credit transactions, employment arrangement, insurance underwriting, government licensing, potential investments or insurance, business transactions initiated by Plaintiff, government travel cards or child support issues. *See* 15 U.S.C. § 1681b(a)(1)-(6).

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

1    Notably, Defendant even accessed Plaintiff's consumer report *after* it already
2    transferred the account away to another servicer. *See* Transfer Letter, *Id.*, Ex. 3
3    (dated November 24, 2014); Resp. to Interrog., *Id.*, Ex. 4, No. 13 (account review
4    inquiry occurred on December 19, 2014); Hardwick Dep., *Id.*, Ex. 1, p. 94:12-13
5    (Defendant had no need for Plaintiff's information in December 2014). Defendant
6    thus had no legitimate need for Plaintiff's or the class members' credit information
7    after their bankruptcy discharge.

8    Second, there was no "account" to review since the debts were discharged in
9    bankruptcy. The "FCRA allows creditors to pull reports for account reviews only to
10   check whether existing customers 'continue' to meet the terms of the account,
11   which is obviously impossible if the account is discharged in bankruptcy."
12   *Maldonado*, No. 2:16-cv-00784-JAD-VCF, 2017 U.S. Dist. LEXIS 129404, at *5 n.
13   11; *Smith*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8
14   ("The idea that a single authorization to obtain credit reporting information for a
15   once existing account would authorize an institution to continue to obtain such
16   information pertaining to a terminated account into perpetuity strains credulity.").
17   Thus, the FCRA distinguishes between open and terminated or discharged accounts.
18   *Maldonado*, at *5 ("The FCRA clearly states that a creditor may not pull a credit
19   report for a customer who no longer has an account."). Here, Plaintiff's and the
20   class members' accounts were discharged in bankruptcy, no longer secured by
21   collateral, and no account existed to review.

22   Third, there were no "terms of the account" to determine if Plaintiff or the
23   class members were meeting those terms. *Smith*, No. 2:16-cv-02156-GMN-NJK,
24   2017 U.S. Dist. LEXIS 99642, at *8 ("The operative word in this provision is
25   "continues," which indicates Congress recognized that once an individual
26   terminated her relationship with a lender it was no longer permissible for the lender
27   to access the account."); *Maldonado*, No. 2:16-cv-00784-JAD-VCF, 2017 U.S.
28   Dist. LEXIS 129404, at *5 n.11 *see also Aleshire v. Harris*, 2012 WL 698280 (N.D.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

Ill. Mar. 1, 2012). Neither Defendant nor its expert could identify the terms of the account. Hardwick Dep., Kind Dec., Ex. 1, p. 34:13-35:8; Ulzheimer Dep., *Id.*, Ex. 7, p. 69:2-4; p. 71:14-23; p. 70:21-23. That is because there were no terms: it was closed, unsecured, with a $0 balance. Bankruptcy Strip Off Order, *Id.*, Ex. 9; Discharge Order, *Id.*, Ex. 8.

Finally, Defendant may try to present some "big picture" data-mining-analyses need for Plaintiff's or the class members' information. *See* Hardwick Dep., *Id.*, Ex. 1, pp. 80:6-9 ("They do data mining to look at trends of delinquencies of accounts, large groups of accounts, not individual -- not individual people. So it's part of that large analysis of portfolios that we do."); 77:12-79:12 (Defendant's account inquiries are for "big picture" analyses. The account reviews are not specific, individual inquiries); 70:21-71:7 (Defendant never reviewed Plaintiff's individual data). As discussed above, however, a user may access a consumer report only if it "has a legitimate business need for the information . . . to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(3)(F)(ii). The FCRA specifically prohibits such big picture data mining credit pulls. *Id.*; *see also Martin v. Asset Acceptance, L.L.C.*, 2012 WL 3042524 (N.D. Ill. July 25, 2012) (the defendant pulled credit information after the debt had been paid in order to develop a predictive model to evaluate consumer credit information received and used). Mr. Ulzheimer, Defendant's expert, agrees. Ulzheimer Dep., Kind Dec., Ex. 7, p. 113: 10-13 ("it appears, anyway, in my interpretation of it that if you're going to pull 10 people's credit reports you need to have a permissible purpose for all 10 people"). Defendant had no permissible purpose to access Plaintiff's or the class members' credit reports after their accounts were discharged in bankruptcy.

**C. Defendant's conduct was willful**

Defendant specifically intended to gather as much information about its account holders and former account holders, regardless of the account status or

consumers' privacy. *See Sorrell v. IMS Health Inc*., 564 U.S. 552, 578, 131 S. Ct. 2653, 2671 (2011) ("information is power"). Defendant was mining data to look for trends on people's credit reports for its own gains. *See* Hardwick Dep., Kind Dec., Ex. 1, pp. 80:6-9; 77:12-79:12; 70:21-71:7; Ulzheimer Dep., *Id.*, Ex. 7, p. 90:21-23 (Defendant had to pay for each credit pull). It had no need for Plaintiff's particular information but gathered it anyway for its own data mining purposes. *Id.* The same applies for all the class members. *See Id.* Such credit pulls are not permissible purposes under the FCRA. 15 U.S.C. § 1681b(a). Defendant's reckless conduct is exactly what Congress sought to prevent by enumerating specific permissible purposes. *See Id.*

"[R]eckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71, 127 S. Ct. 2201, 2216 (2007); *Syed v. M-I, Ltd. Liab. Co.*, 853 F.3d 492, 503 (9th Cir. 2017). Recklessness is an objective standard so Plaintiff needs to show only that Defendant obtained consumer reports and knew it was obtaining consumer reports. *See, e.g., Murray v. GMAC Mortgage Corp.*, 483 F. Supp. 2d 636, 652 (N.D. Ill. 2007), *vacated in part on other grounds on reconsideration*, 532 F. Supp. 2d 938, *aff'd on other grounds*, 274 Fed. Appx. 489 (7th Cir. 2008). Plaintiff and the class members need not provide evidence that Defendant knew what they were doing was wrong but did it anyway.

Defendant had no policies or procedures in place relating to its account review inquiries. Hardwick Dep., Ex. 1, p. 118:16-119-1. Defendant's systems failed to exclude Plaintiff and the class members from the account review inquiries, even though their accounts were discharged in bankruptcy. *See, e.g., Id.* at p. 75:3-7 (Defendant obtained Plaintiff's consumer reports multiple times after Plaintiff's bankruptcy discharge in April 2014). Mr. Hendricks' opinion is that Defendant disregarded the industry's long standing, well known standards, by failing to maintain adequate policies, procedures or practices in place to prevent improper

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

account reviews. Expert Report, Hendricks Dec., Ex. A, p. 2. Defendant's actions were reckless given Defendant's lack of policies, procedures and practices, in light of the multiple notices and well known industry standards. *Id.* at p. 9.[10]

Defendant failed to have adequate mechanisms in place to prevent impermissible access and review of consumer reports for consumers whose accounts were discharged in bankruptcy. *Id.* at p. 2. This is troubling given that adequate training would have been available for about $10,000-$20,000. *See* Ulzheimer Dep., p. 102:17-19; 104:9-106:5. Defendant received notices relating to Plaintiff's bankruptcy, and knew the account was discharged when it continued to access his consumer reports. Hardwick Dep., Kind Dec., Ex. 1, p. 32:2-22; 41:1-6; 47:21-23. Defendant knew that they were accessing Plaintiff's and the class members' credit reports. *See, e.g., Id.* at p. 86:2-7.

Plaintiff and the class members are entitled to statutory damages of "not less than $100 and not more than $1,000" for Defendant's willful noncompliance with the FCRA. 15 U.S.C. § 1681n(a)(1)(A). No genuine issue of material fact therefore exists as to whether Defendant acted willfully. Plaintiff requests that this Court enter summary judgment against Defendant, with statutory and punitive damages to be determined at trial. *See* 15 U.S.C. 1681n(a)(1)(A); *Morse v. USAA Fed. Sav. Bank*, No. 2:12-CV-00381-KJD-RJJ, 2012 U.S. Dist. LEXIS 171196, at *6 (D. Nev. Dec. 3, 2012) ("If the consumer can demonstrate that 'a furnisher willfully violated ones of its duties,' then the consumer can seek 'actual or statutory damages, as well as punitive damages.'").

## VI.  Conclusion

Defendant was on notice from the industry standards, FTC Staff Opinions, known court cases and its Subscriber Agreement with Trans Union that it may not

---

[10] Later, in 2016, Defendant updated its records to note that a credit report "may never be requested for" consumers "whose debt was discharged in bankruptcy and the collateral is no longer secured." Hardwick Dep., Kind Dec., Ex. 1, p. 72:6-15.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

access a consumer report after the consumer's debt was discharged in bankruptcy. Expert Report, Hendricks Dec., Ex. A, p. 7. It failed to maintain adequate policies, procedures or practices, resulting in account review inquiries on Plaintiff's and the class members' consumer reports, after the accounts had a $0 balance and were not secured by collateral.

The caselaw is clear that after a debt has been discharged in bankruptcy, the creditor no longer has a permissible purpose to review the account. *E.g.*, *Smith*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8-9; *Maldonado*, No. 2:16-cv-00784-JAD-VCF, 2017 U.S. Dist. LEXIS 129404, at *5. Defendant agrees. Hardwick Dep., Kind Dec., Ex. 1, p. 72:6-24. Defendant had no legitimate business need for Plaintiff's or the class members' credit information. Expert Report, Hendricks Dec., Ex. A, p. 7. Defendant's own expert could not explain Defendant's legitimate business need for Plaintiff's credit information. Ulzheimer Dep., *Id.*, Ex. 7, pp. 118:17-119:11; 79, 23:24; p. 97:9-15; 98:19-25; 111:5-18; 98:10-100:4.

> Given that the FCRA was enacted specifically to combat unnecessary and unwanted invasions of consumer privacy and maintain consumer confidentiality in the credit bureau industry, Congress enumerated and clearly established specific permissible purposes for a reason. By restricting such improper credit inquiries, Congress recognized the concrete harm that is caused by such inquiries.

*Smith*, No. 2:16-cv-02156-GMN-NJK, 2017 U.S. Dist. LEXIS 99642, at *8-9. Defendant disregarded Plaintiff's and the class members' privacy when it recklessly failed to maintain policies or procedures relating to its account review inquiries. Hardwick Dep., Ex. 1, p. 118:16-119-1.

Plaintiff respectfully requests that this Court rule on this motion only after the class is certified and the class members receive notice. *See Yeoman*, No. 11cv701-WQH (BGS), 2014 U.S. Dist. LEXIS 37749, at *17-18. Because no genuine issues of material fact exist, Plaintiff respectfully requests that this Court

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

grant summary judgment in favor of himself and the class, with statutory and punitive damages to be determined at trial.

DATED this 23rd day of April 2018.

**KAZEROUNI LAW GROUP, APC**

By:   /s/ Abbas Kazerounian
          Abbas Kazerounian, Esq.
          Michael Kind, Esq.
          6069 South Fort Apache Road, Suite 100
          Las Vegas, NV 89148
          *Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on April 23, 2018, I caused the foregoing Plaintiff's Motion for Summary Judgment to be filed and served via CM/ECF on all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By:  /s/ Abbas Kazerounian
     Abbas Kazerounian, Esq.
     *Attorneys for Plaintiff*