Abbas Kazerounian, Esq.
*Pro Hac Vice*
Michael Kind, Esq.
Nevada Bar No. 13903
**KAZEROUNI LAW GROUP, APC**
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148
Phone: (800) 400-6808
ak@kazlg.com
mkind@kazlg.com

David H. Krieger, Esq.
Nevada Bar No. 9086
**HAINES & KRIEGER, LLC**
8985 S. Eastern Ave., Ste. 350
Henderson, NV 89123
Phone: (702) 880-5554
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff Lee C. Kamimura*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Lee C. Kamimura, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>Green Tree Services, LLC,<br><br>Defendant. | Case No. 2:16-cv-00783-APG-CWH<br><br>**DECLARATION OF EVAN D. HENDRICKS** |

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

**DECLARATION OF EVAN D. HENDRICKS**

I, Evan D. Hendricks, declare:

1. I have personal knowledge of the following facts and could and would competently testify thereto, and, as to such matters, I am informed and believe that they are true and correct.

2. Attached as Exhibit A is a true and correct copy of my Expert Report, disclosed in this case, including my opinions in this case, my background and qualifications, curriculum vitae, and recent testimony. They are true and correct.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 20, 2018, pursuant to the laws of the United States.

By: [signature]
Evan D. Hendricks

# EXHIBIT A

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

# PLAINTIFF'S RULE 26(a)(2) EXPERT WITNESS REPORT OF EVAN HENDRICKS

I, Evan Hendricks, provide the following expert report in connection with the case of ***Lee C. Kamimura, individually, and all others similarly situated v. Ditech Financial LLC, formally, known as Green Tree Servicing, LLC***: United States District Court for the District of Nevada; Case No. 2:16-cv-00783-APG-CWH). I reserve the right to supplement this report.

## Presumed Facts

In August 2010, Plaintiff Lee C. Kamimura ("Plaintiff") filed for Chapter 13 Bankruptcy in U.S. Bankruptcy Court in Nevada. In April 2014, Plaintiff received a Bankruptcy discharge, which included a discharge for Plaintiff's account with Defendant Ditech Financial LLC, formally, known as Green Tree Servicing, LLC ("Defendant"). In April 2015, Plaintiff discovered that in September 2014, Defendant submitted an unauthorized credit report inquiry to TransUnion, a credit reporting agency ("CRA"), indicating that Defendant accessed Plaintiff's TransUnion credit report in September 2014 for "Account Review" purposes. Because Plaintiff had discharged the Debt on April 21, 2014, no account relationship existed between Plaintiff and Defendant at any time after April 21, 2014. Thus, at the time Defendant accessed Plaintiff's credit report for "Account Review" purposes on September 3, 2014, Plaintiff did not have any account or business relationship with Defendant on that day or on any day thereafter.

## Summary of Opinions

The "consensus standard" (see below) in the consumer reporting industry is that a user like Defendant can only access a consumer's report for account review purposes if the consumer has an *existing* account with the user. Plaintiff's account with Defendant was discharged in bankruptcy. Consequently, Plaintiff did not have an existing account. Thus, Defendant was not justified in accessing Plaintiff's confidential credit information. Defendant unjustifiably accessed and obtained Plaintiff's credit report data because it lacked any policy, procedure or practice ("PPP") to ensure that it complied with the consensus standard. By unjustifiably accessing his confidential information, Defendant damaged Plaintiff's privacy. Because the consensus standard was a well-known and long standing one, Defendant's unjustifiable access to Plaintiff's credit file reflected its disregard for Plaintiff's privacy, as did Defendant's failure to have a PPP in place to ensure it did not access consumers' reports without permissible purpose. Given the context, Defendant's disregard was serious.

## Opinions

Defendant accessed Plaintiff's confidential consumer report information without justification by accessing and reviewing his confidential personal and financial information in his TransUnion consumer report file.[1] This meant that Defendant improperly invaded an important zone of Plaintiff's privacy.

[1] As considered by me and referenced in this report, the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or

Under industry standards for privacy, users of consumer credit and other financial information can only access a consumer's credit report for account review purposes if that consumer has an existing account with said user. At all times at issue in this case where Plaintiff alleged Defendant impermissibly obtained and used his consumer reports from TransUnion, Plaintiff did not have an existing account with Defendant because the account was discharged in bankruptcy. Defendant therefore had no justifiable or permissible reason for obtaining and using Plaintiff's consumer reports from TransUnion or any of the other CRAs.

Defendant, nevertheless, unjustifiably obtained and used Plaintiff's consumer reports from TransUnion. Defendant obtained Plaintiff's TransUnion consumer report after his bankruptcy discharge because it failed to have in place any PPP to ensure that it not conduct account reviews of credit reports of consumers whose accounts were discharged in bankruptcy. [See deposition of Brad Harwick, pg. 66.]

In fact, Defendant's relevant policies only addressed the pulling of reports by Defendant or its employees on an individual basis [Harwick depo., and Exhibit 8 to Harwick depo]. This meant that Defendant disregarded the need to have a PPP addressing account review pulls.

Instead, to conduct account reviews, or "batch refreshes," under Defendant's PPP, "… there's some code written into GTA that -- that sends TransUnion a file of the accounts that need to be refreshed, and then TransUnion sends back … some sort of text file that is then uploaded into GTA." [Harwick depo., pg. 44.]

In my opinion, to ensure that Defendant did not impermissibly access and obtain credit report data relating to consumers whose accounts were discharged in bankruptcy, it was imperative that prior to sending a file to TransUnion, Defendant vetted that file to ensure that no discharged accounts were included in it.

But Defendant's disregard was so profound that it not only did not do this, it never considered doing it, in my opinion. Moreover, Defendant's disregard was so profound that it did not even see why it would need to have a policy. [Harwick depo., pg. 44.]

Defendant's failure(s) reflected its disregard for long-standing, well-known standards for protecting and respecting credit report privacy.

---

expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for: (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604 [§ 1681b] of the Fair Credit Reporting, 15 U.S.C. § 1681 *et seq*. The term "credit report" will be used interchangeably with the term "consumer report."

## Context

Context is extremely important in this type of case, in part because impermissible access to credit reports is a long-standing and well-known problem. An important role of experts in Fair Credit Reporting Act cases is to help the trier of fact understand the relevant context.[2]

Accordingly, I provide a brief history. An important theme emerging from this history is that users of consumer reports, like Defendant, were put on notice in a variety of ways about the following:

(1) the importance of ensuring that consumer reports are only pulled for permissible purposes;

(2) that there is a genuine risk that companies will continue to unjustifiably access ex-customers' credit reports because they lack adequate practices, policies or procedures to prevent such unjustifiable access;

(3) that there is a genuine risk individuals might try to pull consumer reports for unauthorized purposes;

(4) that this risk has increased because of identity theft;

(5) that a user of consumer credit and other financial information, like Defendant, must adopt the administrative, technical, legal and human safeguards that are necessary to prevent impermissible access to or unauthorized use of consumer reports of innocent consumers from the CRAs;

(6) that failure to adopt adequate safeguards will greatly increase the risk of impermissible access or unauthorized use; and

(7) that impermissible access or unauthorized use can result in significant damage to the innocent victim.

## Overview: Consumer Reports

A credit report contains a compilation of a consumer's: current credit relationships, credit history, employment history, and identifying information, such as name, address, phone number and Social Security number. There are three major repositories known as credit bureaus or credit reporting agencies ("CRAs"), Equifax, Trans Union and Experian. The CRAs regularly receive

---

[2] *Kirkpatrick v. Equifax*, U.S. District Court for District of Oregon, (Slip. Op. CV-02-1197-MO). In rejecting Defendant Equifax's motion to exclude my testimony, Judge Michael W. Mosman, ruling from the bench, stated: "As a general statement, what I'm allowing and the reason I'm allowing it is testimony that puts the particular actions of the defendant in particular here in context, in the context of the nationwide problem of identity theft, in the context of the congressional reaction to that and other issues in the credit-reporting industry, when he can by virtue of his study and his prior testimony, both in court and to Congress, make comparisons, then that's something that's helpful to the jury." (January 18, 2005; Transcript available upon request.)

updates on a consumer's credit relationships from "furnishers," which include mortgage servicers, credit grantors -- banks, mortgage companies, credit card issuers, department stores and others.

The CRAs' "furnishers" are also often their "subscribers," and, pursuant to contractual relationships, enjoy instant, online access to consumer reports and credit reports.

**The FCRA**

A consumer credit report typically contains highly sensitive details about a consumer's finances. To ensure consumers' privacy for this highly sensitive information, Congress enacted the Fair Credit Reporting Act ("FCRA") in 1971 and strengthened it with amendments in 1996.[3]

The "Congressional findings and statement of purpose" section of the FCRA underscores the importance of fairness and of protecting the privacy of consumer reports. Included among

Congress's findings were:

> (1) The banking system is dependent upon fair and accurate credit reporting, and inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system; and
>
> (2) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

A primary goal of the FCRA is to ensure that consumer reports are only used for permissible purposes, which include granting credit, insurance and employment, and for a legitimate business need (including debt collection) in connection with a business transaction initiated by the consumer. This is particularly important because many subscribers enjoy online access to one or more of the CRAs' data, effectively leaving them a few keystrokes away from the consumer reports of some 200 million-plus consumers. The permissible purposes standard, coupled with severe penalties for violations, is intended to deter any person or entities from engaging in unauthorized snooping into consumer reports.

The importance of only using consumer reports is emphasized by the FCRA 1681e(a), which obliges CRAs to require users to certify their purpose for seeking information from the agency. CRAs typically have subscriber agreements with subscribers which also oblige users of consumer reports to adhere to the FCRA's permissible purposes' standards. Since it is a standard

---

[3] 15 U.S.C. § 1681 et seq. In discussing and exploring long-standing, widely recognized notions of privacy, I may quote or refer to legal writings, opinions or statutes. I do this for several reasons. First, the concept of "privacy" was first and most famously articulated by two members of the U.S. Supreme Court, Justices Warren and Brandeis. Second, the U.S. Supreme Court consistently has articulated how notions of privacy have evolved over the past 120 years in a manner that is entirely consistent with how privacy experts view them. To be absolutely clear: I do not cite to legal resources to express legal opinions or legal conclusions. Rather, such authority provides a compelling and convenient tool for enumerating the various facets of privacy and for explaining why they are relevant in this case.

industry practice, it is highly likely the Defendant had/have such a subscriber agreement with one or more of the CRAs.

To further emphasize the importance of only using consumer reports for permissible purposes, the FCRA creates civil liability for willful noncompliance, for knowing noncompliance, and negligent noncompliance, and imposes criminal penalties for obtaining information under false pretenses.

In sum, the FCRA clearly establishes that users of consumer reports are under an unequivocal duty to only obtain and use consumer reports for permissible purposes, and that they are subject to liability if they obtain or use consumer reports for impermissible purposes. Despite these clear standards, throughout the life of the FCRA there have been many reports of CRA subscribers and employees of CRA subscribers exploiting their easy access to consumer reports in order to use consumer reports for impermissible purposes. More generally, there have been many cases when personnel in large organizations have abused their access to sensitive personal information, including the Internal Revenue Service, Social Security Administration, police departments, banks and telephone companies.

**FTC Staff Opinions Put Defendants on Notice**

It is standard practice in the industry that creditors such as Defendant regularly conduct account reviews of their existing customers' credit reports. This is consistent with the constellation of privacy trade-offs in credit reporting, as it is accepted that creditors have a need to review their customers' recent payment histories in order to guard against the consequences of a downturn in their customers' creditworthiness. Such matters are relevant as to determining whether the consumer will *continue* to meet the terms of the account.

However, once a customer's account is closed or is otherwise terminated because it was discharged in bankruptcy, the creditor no longer needs to determine whether the consumer will *continue* to meet the terms of the account. Thus, the privacy paradigm completely shifts, meaning that the ex-customer's credit report is entitled to privacy because the creditor has lost the very reason which previously entitled it to conduct account reviews.

It has been nearly 20 years since the Federal Trade Commission (FTC) opined that there is no permissible purpose to access a consumer's credit report for "account review" purposes when there is no existing credit account to review:

> As the … legislative history makes clear, "review" of an account under Section 604(a)(3) refers to an existing (i.e., open or current) account. A creditor has no existing business relationship with consumers whose closed end credit accounts have been paid off, i.e., former borrowers. Hence, the creditor would either have to (1) obtain those consumers' written authorizations pursuant to Section 604(a)(2) to access their credit reports or (2) comply with the prescreening requirements set forth in Section 604(c)

and, where applicable, Section 615(d).[4]

The FTC further said:

> Because there no longer exists any account to "review" and the consumer is not applying for credit, the FCRA provides no permissible purpose for the creditor to receive a consumer report from a CRA.[5]

Through these opinions, the FTC established in the consumer reporting industry an important standard for privacy, which will referred to herein as the "consensus standard."

As explained below, this consensus standard has effectively governed issues concerning permissible access to consumer report data and account reviews. It is reflected in all related guidance and opinions from the FCRA's oversight authorities and in standard industry documents.

In 2011, prior to Defendant's unwarranted intrusions into Plaintiff's confidential credit report information, the FTC provided additional notice to users such as Defendants by adopting these opinions in its seminal commentary and reaffirming the consensus standard. ("Forty Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report and Summary of Interpretations," (July 2011) (www.ftc.gov/os/statutes/fcrajump.shtm)

The following are excerpts from the FTC Staff Report:

***Beginning of Excerpts from FTC Staff Report Regarding Existing Accounts***

> 3. REPORTS FOR "REVIEW OR COLLECTION OF AN ACCOUNT" – PERMISSIBLE PURPOSE EXISTS
>
> A. Creditor. In order for a creditor to have a permissible purpose to obtain a consumer report to review an account, it must have an existing credit account with the consumer and must use the consumer report solely to consider taking action with respect to the account (e.g., modifying the terms of an open end account) …
>
> 4. REPORTS FOR "REVIEW OR COLLECTION OF AN ACCOUNT" – PERMISSIBLE PURPOSE DOES NOT EXIST
>
> B. Paid off and closed accounts. Once an account is paid off and closed, the creditor does not have a permissible purpose for obtaining a consumer report from a CRA because there no longer exists any account to "review." …
>
> …However, an existing creditor's use of consumer reports for review or collection of its accounts does not fall within the definition of "credit or insurance transaction that is not initiated by the consumer." Rather, an ***existing*** creditor may

[4] Letter dated April 29, 1999 from Ronald G. Isaac, Federal Trade Commission to Don Gowen, Security Mutual Financial Services, Inc.
[5] Letter dated April 30, 1999 from Clarke W. Brinckerhoff, Federal Trade Commission to Kenneth J. Benner, American Counsel on Consumer Awareness.

obtain consumer reports for review or collection of its accounts under section 604(a)(3)(A), but its use of those reports is limited to that purpose. Accordingly, a CRA may provide reports to creditors to ***review or collect existing credit accounts*** …" [Emphasis added] …

… The Staff Summary adopts the essence of this opinion, but makes clear that the analysis does not turn on whether or not the account is open-end or closed-end. Staff believes that the "review" permissible purpose applies only where the creditor has an existing account relationship with the consumer and uses the report solely to decide whether to modify the terms of the account.

***End of Excerpts from FTC Staff Report Regarding Existing Accounts***

## Subscriber Contract Provides Notice

The credit reporting industry acknowledged this standard by including it as a term of its contracts with subscribers. I have not yet been able to review the actual subscriber contracts between Defendant and any of the CRAs. I have, however, reviewed the standard agreements of each of the CRAs have with subscribers, including mortgage servicers, in a number of cases and I anticipate the contracts involved in this case to be substantially the same with respect to requiring Defendant, the subscribers, to have a permissible purpose before requesting a consumer report from the CRAs about a consumer. In my experience, these standard agreements usually state the subscriber is not allowed to pull a consumer report for "account review" purposes on a closed account where no balance is owing.

## Industry Manuals Provide Notice

The Consumer Data Industry Association ("CDIA"), which is the trade industry association for the consumer reporting industry, is the entity that establishes standards for the industry. The CDIA's manual, which is widely used by participants in the credit reporting system, also endorses the consensus standards by referring to accounts as, "Newly opened account, or new borrower associated with existing account."

## Court Decisions Put Defendant on Notice

In the last few years, Federal Courts have held that the consensus standard governs access to consumers' report data with respect to debts discharged in bankruptcy.[6]

[6] See *Godby v Wells Fargo Bank, N.A.,* 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008); *Haberman v. PNC Mortgage Company*, Case No. 4:11cv126 (E.D. Texas 2012).

As Judge Michael R. Barrett wrote, "Notwithstanding Plaintiff's name on the title to the property, as a practical matter, the parties did not have an existing relationship. Plaintiff had surrendered her rights to the property. In addition, Defendant would have been unable to collect any debt since it had been discharged in the bankruptcy proceedings. Therefore, Defendant did not have a permissible purpose under section 1681b(a)(3)(F). (Godby v Wells Fargo Bank, N.A., 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008)

As Judge Amos L. Mazzant wrote,

> 72. Defendant does not dispute that it utilizes other account monitoring or "trigger" products.
>
> 73. Based on the overwhelming weight of the evidence, specifically including the testimony of Evan Hendricks and Lynn Romanowski, as well as the three TransUnion credit reports that were admitted at trial showing TransUnion's record of the instances on which TransUnion forwarded some or all information from Plaintiff's credit report to Defendant, the Court finds that Defendant obtained a consumer report about Plaintiff on each of the instances indicated as "Account Review Inquiries" on those TransUnion credit reports.
>
> 74. Defendant does not dispute that Plaintiff, by and through counsel, contacted Defendant in or around June 2010 to alert Defendant that it was illegally obtaining account reviews about Plaintiff without a permissible purpose.
>
> 75. The Court finds that Defendant had actual knowledge as of June 2010 that any additional account reviews about Plaintiff were being done without a permissible purpose. (*Haberman v. PNC Mortgage Company*, Case No. 4:11cv126 (E.D. Texas 2012).

I quote the following courts because their opinions and findings go to notice. I do not quote them for the purpose of expressing any legal opinions or conclusions.

**Defendant Invaded Plaintiff's Privacy**

It is my opinion that the context described above makes it clear that Defendant knew, or should have known, that it was invading Plaintiff's privacy subsequent to his bankruptcy discharge by obtaining and using his consumer reports from TransUnion.

It is my opinion that pulling a consumer's credit report and obtaining and using a consumer's consumer report without a permissible reason under the FCRA is, in and of itself, "taking action" on an account.

It is my opinion that an individual's concern about their privacy in the modern era is mainly about third parties and large organizations access to, collection, maintenance and/or disclosure of these individual's personal data. The fact that Defendant was accessing Plaintiff's individual,

personal and confidential data without a permissible purpose would clearly raise privacy concerns among many reasonable people, in my opinion; especially since, as has been seen repeatedly in the last several years, computers and electronically stored information and data are subject to compromise.

In my opinion, Defendant needed to have mechanisms and/or procedures in place to stop impermissible accesses of credit reports and obtaining and using consumer reports without a permissible purpose under the FCRA, for debt and accounts they own or service, subsequent to the discharge of the debt underlying these accounts.

At all times at issue here, Defendant knew, or should have known, as shown in the Discharge Order, that Plaintiff was not liable for the subject debt and no longer had an open, existing account with Defendant. Nonetheless, Defendant conducted an account review on the Plaintiff's account and consequently obtained and used Plaintiff's consumer reports without a permissible purpose. Either Defendant affirmatively decided the Account was appropriate for continued review, or it carelessly failed to remove it from its systems that conduct account reviews with TransUnion. In my opinion, if  had adequate mechanisms in place to prevent impermissible access, review and obtaining of consumer reports for consumers whose accounts that are owned or being serviced by them are discharged in bankruptcy, Defendant would not have impermissibly pulled Plaintiff's credit reports and obtained and used Plaintiff's consumer reports as it did.

In light of Defendant's general knowledge of consumer privacy, the requirements of the FCRA, and the terms of its contract with TransUnion, and in light of the standard enunciated in the *Godby* case, as well as the facts of this case, it is my opinion that Defendant's impermissible accessing of Plaintiff's credit report was reckless.

## Damages

To fully appreciate how Plaintiffs were damaged by Defendant's intrusive actions, and to appreciate how Defendant knew or should have known that their conduct was damaging to Plaintiffs, it is again necessary to provide context in the form of a brief history of privacy, the FCRA and the Fair Information Practice Principles (FIPs) underlying it.[7]

## Relevant Privacy History & Standards

Prof. Alan F. Westin, of Columbia University, was one of the early, modern-day scholars of privacy. In his 1967 book, Privacy and Freedom, he focused on the emerging issue of "information-privacy" – how the amassing of personal data allowed for new forms of "data surveillance." In the book, Westin defined privacy in part as "the claim of individuals, groups, or institutions to determine for themselves when, how and to what extent information about them is communicated to others." Harvard Law Professor Charles Fried once referred to privacy as "that aspect of social order by which persons control access to information about themselves."

[7] Some of this history is provided in Chapter 10, "History," of my book Credit Scores and Credit Reports.

Similarly, the U.S. Supreme Court wrote, "[t]o begin with, both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."[8]

The goal of providing individuals with reasonable control over their personal information led to the formulation of Fair Information Practice Principles, an effort in which Prof. Westin was integrally involved. In its 1973 report, the [HEW] Secretary's Advisory Committee on Automated Personal Data Systems defined five principles of fair information practice:
(1) there must be no personal data record keeping systems whose very existence is secret;

(2) there must be a way for an individual to find out what information about him or her is in a record and how it is used;

(3) there must be a way for an individual to prevent information about him or her obtained for one purpose from being used or made available for other purposes without his/her consent;

(4) there must be a way for an individual to correct or amend a record of identifiable information about him or her; and

(5) any organization creating, maintaining, using, or disseminating records of identifiable personal data must assure the reliability of the data for their intended use and must take reasonable precautions to prevent misuse of the data.

One year after the 1973 report, the Watergate scandal raised the nation's privacy consciousness. Prof. Westin's book and the HEW Task Force report became the foundation for enactment of the U.S. Privacy Act of 1974. That Act, in turn in 1975 created the Privacy Protection Study Commission (PPSC), a blue-ribbon panel that held hearings, studied information-privacy issues relating to most of the private sectors, and made legislative and other recommendations published in its final report.[9]

The report's introduction articulated three objectives that endorsed Fair Information Act Principles.[10] "These three objectives both subsume and conceptually augment the principles of the Privacy Act of 1974 and the five fair information practices principles set forth in the 1973 report of the [HEW] Secretary's Advisory Committee on Automated Personal Data Systems."

---

[8] *U.S. Dept. Of Justice v. Reporters Committee*, 489 U.S. 749 (1989). This definition of privacy was reaffirmed and expanded upon by the Court in Office of Independent Counsel v. Favish, 541 US 157 (2004)

[9] Personal Privacy in the Information Age: The Report of the Privacy Protection Study Commission, (July 1977; GPO Stock No. 052-003-00395) Herein referred to as the PPSC Report.

[10] The three general principles were: (1) minimize intrusiveness; (2) open up record-keeping operations in ways that will minimize the extent to which recorded information about an individual is itself a source of unfairness in any decision about him made on the basis of it (maximize fairness); and (3) create legitimate enforceable expectations of confidentiality

After the introduction, the first PPSC's substantive chapter, Chapter 2, "The Consumer- Credit Relationship," focused on the FCRA.[11] "Although their scope and particular requirements differ, the FCRA and the Privacy Act of 1974 share a common aim: that the policies and practices of record-keeping institutions minimize unfairness to individuals in the collection, maintenance, use and disclosure of records about them," the report stated. In that chapter, the commission

The remaining 14 chapters address personal data held by banks, insurers, employers, health care providers, direct marketers, government agencies, the Privacy Act, and Social Security numbers. In nearly all the chapters, the PPSC made extensive recommendations to enact new privacy laws or strengthen existing ones. From a policy point of view, the commission defined "information privacy" in terms of Fair Information Practices, and explained that the FCRA was based on FIPs and therefore was an "information privacy" law. It recommended changes to strengthen the FCRA so it would more effectively realize these goals. Some of the recommendations became law with the enactment of the 1996 FCRA amendments. Other recommendations became "industry best practices."

The PPSC report set the foundation for analyzing and evaluating law, policy and organizational practices relating to the collection, use and disclosure of personal data. Its methodology was to identify the principles of Fair Information Practice and then apply them to the issue at hand, whether it be a standard industry practice or the statute governing that industry.

As discussed above, a goal of FCRA, like other information privacy laws, is to ensure that individuals maintain reasonable control over their personal information. Conversely, it is damaging to individuals when they unreasonably lose control over their information.
As noted above in the sections on Fair Information Practices, one of the dominant privacy concerns in today's information age is the collection, use, disclosure and security of personal data.

In enacting the Fair Credit Reporting Act, Congress specified in the Act's findings and statement of purpose that, "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy."

Conversely, if privacy is not respected, i.e. if personal information is wrongly accessed, disclosed or misused, then it is damaging to the individual to whom the information pertains. Hence, a primary goal of the FCRA, and of other privacy statutes and rules, like the U.S. Privacy Act of 1974, the HIPAA regulations for patient data, the Video Rental Protection Act and the Cable Television Privacy Protection Act, is to prevent damage to individuals through the wrongful use or disclosure of their personal data.

A 1981 report by the Congressional Office of Technology Assessment (OTA) explained that not protecting privacy would be damaging both to society and to individuals. "The nature of societal values attached to privacy in the United States may change if larger and more ubiquitous information systems gradually remove the ability of individuals to control disclosures about their private activities. The possession by large organizations of personal data on individuals enhances

[11] Ibid, "Chapter 2: The Consumer-Credit Relationship," pgs. 41-100

the power, real or perceived of the organization over the person. These and similar effects may increase suspicion some citizens have of large organizations -- business, labor or government -- and thus erode social cooperation and a personal sense of well-being."

In the 40 years that I have intimately followed privacy developments, I have observed that victims consistently have complained that unjustified invasion of their privacy caused them emotional distress. It was distressful to learn first-hand how their sensitive personal financial information was accessed without their consent, they said. It was distressful to learn that their sensitive personal financial information was obtained by fraudsters and then used to perpetuate more fraud in their good names. It is distressful to be ambushed by inaccurate information or by debt collection calls because one realizes first-hand how it could happen again, anytime, when one least expects it. It is distressful to be wrongly associated with highly derogatory credit data, and to have to clear your name. It also is distressful not knowing everyone who may have associated with highly derogatory credit data. It is very difficult to maintain constructive personal relationships under stress. It is difficult to perform adequately at one's job. Victims of privacy invasion often speak of being distracted because their minds regularly return to the intrusive event or events and its possible consequences. This can cause sleeplessness or failure to concentrate at work or in conversations, they say.

My observations are consistent with the OTA's finding that invasion of privacy can decrease one's ability to trust the system in which he or she lives. I agree with the observation made by Judge M. Blane Michael (dissenting), of the U.S. Court of Appeals for the Fourth Circuit in *Buck Doe, Virginia Privacy Litigation, et al. v. Elaine L. Chao, Sec. of Labor, et al*.: (Slip. Op. No. 00-2247 & --2292; Sept. 20, 2002), that "Congress recognized that the typical injury caused by the invasion of privacy is emotional distress."

**Invasion of Plaintiff's Privacy**

Plaintiff suffered damage to his privacy when Defendant impermissibly obtained and used his consumer reports.

Impermissible access is one of the most egregious forms of invasion of privacy because it means the privacy violator is obtaining personal data for a purpose not authorized by law. Thus, the violator is accessing data which was supposed to remain confidential and which it was never supposed to obtain.

Courts have done an excellent job articulating the harm to privacy. I quote the following courts precisely for that purpose, and not for the purpose of expressing any legal opinions or conclusions. In *Myers v. Bennett Law Offices*, the U.S. Court of Appeals for the Ninth Circuit addressed the FCRA's underlying purpose of protecting privacy by deterring impermissible access:

"The FCRA is intended to safeguard against the improper reporting of information on a credit report (either by the credit reporting agency or by the furnisher of credit information) and against the improper disclosure of a credit report," wrote Judge A. Wallace Tashima for the unanimous three-member panel.

"When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law – cases where the Plaintiffs alleges that the defendant unlawfully invaded the Plaintiff's privacy by obtaining information deemed confidential," he continued.

"In the 'right of privacy' cases the primary damage is the mental distress from having been exposed to public view," Judge Tashima wrote.

“Congress recognized that the typical injury caused by the invasion of privacy is emotional distress,” wrote Judge J. Blane Michael (Doe v. Chao, 435 F.3d 492 (4th Cir. 2006), dissenting.)

These observations apply to Plaintiff's case, in my opinion.

**Background & Qualifications (Curriculum Vitae Attached)**

My expertise in credit reporting stems from several of my professional activities, including:

(1) Editor/Publisher of a specialty news reporting service that covered credit reporting, Fair Information practices and related matters, for 33 years;

(2) Author of the book Credit Scores and Credit Reports: How The System Really Works, What You Can Do, 3rd Edition, (Privacy Times 2007), and co-author of a book with a chapter on credit reporting;

(3) An expert witness qualified by Federal and State courts in Fair Credit Reporting Act (FCRA) litigation:

(4) an expert on credit reporting who has testified before Congress on numerous occasions, and who has testified before State legislature in regards to legislation on the use of financial data, and who regularly presents at Continuing Legal Education and other professional events; and

(5) an expert consultant to government agencies and private corporations, a member of the Consumer Advisory Council of Experian (one of the three national Credit Reporting Agencies (CRAs), and as one who has earned FCRA Certification from the National Credit Reporting Association (NCRA).

From January 1981 to December 2013, I was Editor/Publisher of *Privacy Times*, a biweekly, Washington-based newsletter that reports on privacy and information law, including the Fair Credit Reporting Act (FCRA). The newsletter ranges from 8-12 pages, 23 issues per year. Thus, I have researched, written, edited and published many articles on Congressional and State legislative actions, judicial opinions, industry trends and actions, executive branch policies and consumer news as they related to the FCRA.

I am author of the book, Credit Scores and Credit Reports: How The System Really Works, What You Can Do (3rd Edition, Privacy Times 2007). The book has 23 Chapters, 403 pages and 369 footnotes. As the title indicates, it describes how the credit scoring and credit reporting systems work and what consumers can do to obtain their reports, read and understand them, correct errors in them and enforce their rights. I also am co-author of Your Right To Privacy: A Basic Guide To Legal Rights In An Information Society (2nd Edition, Southern Illinois University Press, 1990), which has a chapter on credit reporting.

Since the early 1990s, I have served as an expert witness in numerous FCRA cases and have been qualified by the federal courts. As an expert witness, I have had the opportunity to read thousands of pages of deposition testimony by consumer reporting agency officials and by credit grantor personnel responsible for reporting data to CRAs. This is significant because CRAs and credit grantors do not openly discuss or publish information on their procedures and practices for handling personal data. In fact, CRAs typically consider such procedures and practices to be proprietary and/or trade secrets. To my knowledge, the best (and possibly only)

sources for finding candid descriptions of CRAs' and credit grantors' procedures and practices in relation to credit reporting data are the depositions of CRA and credit grantor employees in FCRA litigation. Due to my access to this information, I have augmented my specialized body of knowledge on practices and procedures related to credit scoring and credit reporting.

Two of the three major CRAs have acknowledged that I am an expert on credit reporting as it relates to "Fair Information Practices." First developed in the United States in the late 1960s, Fair Information Practices (FIPs) standards are at the core of the FCRA and most other U.S. and European privacy and data protection laws, and serve as an internationally accepted standard for gauging privacy policy and practices.

In 1990, Equifax published "The Equifax Report on Consumers In the Information Age," a nationwide opinion survey and analysis by Louis Harris and Associates and Prof. Alan F. Westin. The report listed me as a privacy expert to whom the authors expressed appreciation for my advice on survey coverage.

In April 2002, I accepted Experian's invitation to serve on the Experian Consumer Advisory Council of Experian (formerly TRW), a national CRA and vendor of other information services. Before being disbanded in 2004, the Council met twice a year to offer non-binding advice and to discuss a host of credit reporting, marketing and other privacy-related topics.

In 2004, I passed an industry examination, thereby earning "FCRA Certification" from the National Credit Reporting Association.

From 1998 to 2007, I served under contract as a member of the Social Security Administration's Panel Of Privacy Experts advising the agency on a host of issues.
(Please consult the attached CV for additional information.)

*Evan D. Hendricks*
***CURRICULUM VITAE***

**Professional Activities**
**1981- December 2013** **Editor/Publisher** of ***Privacy Times***

From 1981 to December 2013, I was Editor/Publisher of *Privacy Times*, a biweekly, Washington-based newsletter that reports on privacy and information law, including the Fair Credit Reporting Act (FCRA). The newsletter ranges from 8-12 pages, 23 issues per year. Thus, I have researched, written, edited and published many articles on Congressional and State legislative actions, judicial opinions, industry trends and actions, executive branch policies and consumer news as they related to the FCRA.

**1992 – Present** **Expert Witness**

Qualified by the federal courts in FCRA cases and cases involving credit reporting, credit scoring, privacy, and identity theft. (Complete list attached). I have read extensive deposition testimony by credit bureau and credit grantor personnel. This is significant because CRAs and credit grantors do not openly discuss or publish information on their procedures and practices for handling personal data, and the best (and possibly only) sources for finding candid descriptions of CRAs' and credit grantors' procedures and practices in relation to credit reporting data are the depositions of CRA and credit grantor employees in FCRA litigation.

**May 2014 – Present** **Member, Board of Directors, Privacy Rights Clearinghouse**

**2005 – 2009** **Consultant, ID Watchdog**

**1998 – 2006** **Privacy Expert Consultant, U.S. Social Security Administration**

Regularly review policies and practices in relation to the collection, use and disclosure of personal data and Social Security numbers and provide feedback and recommendations.

**2002 – 2004** **Member, Experian Consumer Advisory Council**
Along with other Council members, I provide an outsider's view on credit reporting, marketing and other privacy issues.

**July – October 2002** **Consultant to U.S. Postal Service**
Working with the USPS's Chief Privacy Officer, I assisted in reviewing and editing the re-write of the USPS's Privacy Act notices, with an emphasis on "Plain English."

---

**Evan Hendricks** **P.O. Box 302** **Cabin John, MD 20818**
**(301) 229 7002 (301) 229 8011 [fax] evan@privacytimes.com**

---

**Recent Testimony Before Congress & The FTC**

"Keeping Score on Credit Scores: An Overview of Credit Scores, Credit Reports and their Impact on Consumers," House Financial Services Committee, Subcommittee on Financial Institutions and Consumer Credit Hearing, March 24, 2010.

"What Borrowers Need to Know About Credit Scoring Models and Credit Scores," House Financial Services Subcommittee on Oversight, July 29, 2008.

"Credit Reports: Consumers' Ability to Dispute and Change Information," House Financial Services Committee, June 19, 2007.

"Privacy in the Commercial World II," House Energy & Commerce Subcommittee On Commerce, Trade, and Consumer Protection, June 20, 2006.

"Financial Data Protection Act of 2005," House Financial Services Subcommittee on Financial Institutions and Consumer Credit, November 9, 2005.

"Credit Card Data Processing: How Secure Is It?" House Financial Services Subcommittee on Oversight and Investigations, July 21, 2005.

"Identity Theft: Recent Developments Involving the Security of Sensitive Consumer Information,"[24] Senate Banking Committee, March 15, 2005.

"The Accuracy of Credit Report Information and the Fair Credit Reporting Act;" Senate Banking Committee, July 10, 2003.

"The Role of FCRA in the Credit Granting Process," House Financial Services Subcommittee on Financial Institutions & Consumer Credit, June 12, 2003.

"Database Security: Finding Out When Your Information Has Been Compromised," Senate Judiciary Subcommittee on Technology, Terrorism and Government Information, Nov. 4, 2003.

"Fighting Fraud: Improving Information Security," House Financial Services Subcommittee on Financial Institutions & Consumer Credit, and Oversight, April 3, 2003.

"Information Flows: The Costs and Benefits to Consumers and Businesses of The Collection and Use of Consumer Information," Federal Trade Commission, National Workshop, June 18, 2003

**Books**

Credit Scores and Credit Reports: How The System Really Works, What You Can Do [3rd Edition] (Privacy Times, 2007)

Your Right To Privacy: A Basic Guide To Legal Rights In An Information Society (2nd Edition, Southern Illinois University Press, 1990), (Includes a chapter on credit reporting)

Former Secrets: Government Records Made Public Through The Freedom of Information Act (Campaign For Political Rights, 1982)

**International Lectures**

24th International Conference of Data Protection & Privacy Commissioners (Cardiff, Wales – Presentation published in conference proceedings, 2002)

The 23rd International Conference of Data Protection Commissioners (Paris, La Sorbonne – Presentation published in conference proceedings, 2001)

The 22nd Annual Conference on Data Protection (Venice, Italy -- 2000)

The 16th Annual Conference on Data Protection (The Hague, The Netherlands -- 1994).

In the 1980s, served as an expert consultant to both the Privacy Commissioner of Canada and Privacy Commissioner of Australia.

**Presentations/Instruction At Recent CLE & Professional Seminars**

"Key Privacy Statutes - FCRA and Background Check Problems," Conference on Effective Consumer Privacy Enforcement, Univ. of California-Berkeley Samuelson Law, Technology & Public Policy Clinic. Oct. 13-14, 2011. Berkeley, Calif.

"Annual FCRA Conference," National Association of Consumer Advocates. May 20-21, 2011. Memphis, Tenn.

"91st Annual New York Meeting," Commercial Law League of America (CLLA) November 12, 2010

"2010 NCLC Consumer Rights Litigation Conference," National Consumer Law Center. November 13, 2010. Boston, Mass.

"26th Annual Consumer Bankruptcy Course," State Bar of Texas. June 3, 2010. Dallas.

"Consumer Protection Law Comm. Representing Main Street: A Consumer Law Primer" Florida Bar Association; June 26, 2009. Orlando.

"Second Law and Information Society Symposium: Enforcement, Compliance and Remedies in the Information Society," Presenter, "Credit Report Cases – Effective Remedies?" Center on Law and Information Policy (CLIP), Fordham Law School, New York, May 29-30, 2008.)

"The 1st Annual Privacy Law Scholars Conference," Presenter, "Assessing Privacy Harm: How can victims of privacy violations prove that they have been harmed? The George Washington University Law School, Washington, DC, June 12-13, 2008.

"11th Annual Consumer Financial Services Litigation," Practicing Law Institute, March 20-21, 2006 (New York City)

"Bankruptcy Roundtable," and, "Fair Credit Reporting Act Roundtable," National Consumer Law Center, October 27, 2005

"Advanced Consumer Litigation," Texas Bar CLE, Feb. 10-11, 2005

"Financial Privacy Litigation," (Impact of FACT Act), Practicing Law Institute, February 28- March 1, 2005 (New York City)

"The New FACT Act: Challenge & Oppty.," Privacy & American Business, Feb. 9-10, 2004

"Understanding the FACT Act And The Impact of Multi-Agency Rulewriting Process," Glasser LegalWorks, Sept. 28-29. 2004

"12th Annual National Conference," National Credit Reporting Association, Nov. 10-12, 2004

**Professional Societies**
Past President & Board Member, American Society of Access Professionals www.accesspro.org

**Industry Certification**

FCRA Certification, National Credit Reporting Association (www.ncrainc.org).

**Media**
In addition to being a paid consultant and special guest on CNN's IMPACT news in 1996, I am quoted regularly by major and small newspapers (including The Washington Post, New York Times, Wall Street Journal, Chicago Tribune, Los Angeles Times, Newsweek and Money Magazine), regarding issues of privacy generally and the privacy implications of consumer reporting specifically. I have appeared on National Public Radio, PBS NewsHour with Jim Lehrer, ABC Nightline and World News Tonight, NBC Nightly News, CBS Evening News, CNN News Watch, CNBC, MSNBC, Fox News, various local affiliates, and the Oprah Winfrey Show and Geraldo, regarding these issues as well.

**Expert Testimony**

I have testified at trial, or been deposed as an expert, in the following cases:

Andrews v. Trans Union Corp. et al., Case No. 96-7369, (USDC-C.D. Calif.), concerning theft- of-identity and consumer report inaccuracies. Expert report, deposition, trial testimony. Judge Lourdes Baird presiding. The U.S. Court of Appeals for the Ninth Circuit specifically found that my opinion on the prevalence of identity theft was relevant to the reasonableness of CRA procedures. (See 225 F.3d 1063 (2000)).

Julie Miller v. Equifax Credit Information Services, LLC: U.S. District Court for the District of Oregon. Credit Reporting. Expert disclosure and report. Deposition. Trial Testimony. Judge Anna J. Brown rejected Equifax's Daubert motion to exclude me from testifying.

Richard Alexander Williams v. First Advantage LNS Screening Solutions, et al.: U.S. District Court Northern District of Florida [Gainesville Div.]. (Case No. 1:13-cv-00222-MW-GRJ). Judge Mark E. Walker rejected Equifax's Daubert motion to exclude me from testifying.

Rachael Macik v. JP Morgan Chase, N.A., et al.: U.S. District Court for the Southern District of Texas (Case 3:14-cv-44). Expert report and affidavit. Trial Testimony. Judge George C. Hanks, Jr. presiding.

David M. Daugherty v. Equifax Information Services, Ocwen Loan Servicing, et al.: U.S. District Court for the Southern District of West Virginia (Beckley Div.); No.: 5:14-cv-24506. . Deposition. Trial Testimony. In rejecting Ocwen's Daubert motion to exclude me from testifying, Judge Irene C. Berger ruled:

> I find that he has experience, related experience, counsel, and that he should be allowed to give expert testimony … I find that that testimony could be helpful to the jury …
>
> I specifically find that in order for him to have specialized knowledge that's useful to the jury, it is not necessary that he have first-hand experience with working with one of the credit reporting agencies.

Richard and Kristin Zabriskie v. Federal National Mortgage Association, et al: U.S. District Court for the District of Arizona – (No. 2:13-cv-02260-DKD). Expert Report. Trial Testimony (2016). Deposition. (2015). Judge Susan Bolton rejected Defendant "Fannie Mae's" Daubert motion to exclude me from testifying.

April K. Barnett v. Chase Bank (USA) N.A. et al.: U.S. District Court for the Northern District of Alabama [Eastern Div.] (1:12-CV-1745-VEH). Expert disclosure and report. Deposition. Judge Virginia Emerson Hopkins rejected Chase's Daubert motion to exclude me from testifying.

Terry D Toler & Donna R. Toler v. PHH Mortgage Corp., Experian Information Solutions, Inc., et al.: U.S. District Court for the Western District of Arkansas [Hot Springs Div.]; (Case No. 6:12-cv- 06032-RTD) Expert Report. Deposition. Trial Testimony. (2014) Judge Robert T. Dawson rejected Experian's Daubert motion to exclude me from testifying.

Angela P. Williams vs. Equifax Information Services, LLC, et al., Circuit Court for the Ninth Judicial Circuit, Orange County Florida. Credit Reporting. Expert disclosure and report. Deposition. Trial Testimony. Judge George A. Sprinkel IV rejected Equifax's Daubert motion to exclude me from testifying.

Eric Robert Drew vs. Equifax Information Services, LLC, et al., U.S. District Court for the Northern District of California, Case No. CV 07-00726-SI. Expert report, Deposition, Trial Testimony. Judge Susan Illston rejected Equifax's Daubert motion to exclude me from testifying.

Dennis Hollidayoke vs. JBL Mortgage Network: In the Circuit Court for Anne Arundel County, Maryland, No. 02C10155944. Expert report, Deposition, Trial Testimony.

Direct Data Solutions, Inc., v. Bailey & Associates Advertising, Inc.: Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida; Case No.: 07-9322 CA 09. Judge Jerald Bagley presiding.

Brenda F. Campbell v. Experian: U.S. District Court for the Western District of Missouri (No. 07-2514). FCRA. Expert report, deposition. Trial Testimony. Judge Nanette K. Laughrey rejected Experian's Daubert to exclude me from testifying.

Laura Jones v. Capital One: U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria), Case 09-14499-BFK, Chapter 7. Post-bankruptcy credit reporting. Expert report. Trial Testimony. Judge Brian F. Kenney presiding, said from the bench:

> "Before we begin with Mr. Hendricks, a brief disclosure. I had a case a few years ago. Mr. Hendricks may recall that I was representing a creditor in which Mr. Hendricks was identified as an expert witness in the Eastern District of Virginia. I believe it was the Sloane case, Mr. Hendricks. I took Mr. Hendricks' deposition and I subsequently moved to exclude him as an expert in the case on a Daubert challenge. I lost the Daubert challenge. The court allowed him to testify as an expert witness; and I will say, during the course of his deposition and the Daubert challenge, I learned quite a bit about credit reporting. Just in the interest of full disclosure, I'll disclose that to the parties."

In Re: MicroBilt Corp. et al., U.S. Bankruptcy Court for the District of New Jersey (Trenton Div.); Case No. 11-18143 (MBK). Deposition, Trial Testimony. (I was retained by MicroBilt counsel Bruce Luckman, who in previous years as counsel for TransUnion, unsuccessfully opposed me with a Daubert challenge in the Sandra Cortez case (see below).

Vernon Singleton v. Universal Credit Services, et al.: U.S. District Court for the Eastern District of Pennsylvania; 2:14-cv-06380. Expert report, Trial Testimony.

Rowan DeSantis v Willard Merkel: Multnomah County Circuit Court. Trial Testimony.

In Re: Residential Capital, LLC, et al.: U.S. Bankruptcy Court for the Southern District of New York; Case No. 12-12020 (MG). Expert report, Trial Testimony. Judge Martin Glenn presiding.

Alison Bastek v. Comenity Bank, et al: Superior Court for the State of California, County of San Diego; No. 37-2016-17012-CU-BC-CTL. California Credit Reporting Act. Deposition. Trial Testimony. Judge Richard E.L Strauss presiding.

Roger Chang, Thomas Wong v. Hamni Bank: Superior Court of the State of California, County of Santa Clara. (110CV181546) Expert report, deposition. Trial Testimony. Judge Joseph Huber presiding.

Steven W. Haberman v. PNC Mortgage Company, et al.: U.S. District Court for the Eastern District of Texas [Sherman Div]. Case No. 4:l1cv126. FCRA, identity theft. Expert report. Deposition. Trial Testimony. Magistrate Judge Amos L. Mazzant presiding.

Harold & Beryllin Gamby v. Equifax Information Services, et al.: U.S. District Court for the Eastern District of Michigan [Southern Div.] (CV-06-11020-MO). FCRA, identity theft. Expert report. Deposition. Trial Testimony. Judge Marianne O. Battani presiding.

Deborah Adams v. National Engineering Service Corp./Verifications Inc.,: U.S. District Court for the District of Connecticut. (3:07-cv-01035-JCH.) FCRA. Expert report, deposition. Trial Testimony. Judge Warren W. Eginton presiding.

Rebecca L. Valentine. v. Equifax Credit Information Services, et al.: U.S. District Court for the District of Oregon; No. CV 05-801-JO. FCRA, identity theft. Expert report. Deposition. Trial Testimony. Judge Robert E. Jones rejected Equifax's Daubert motion to exclude me from testifying.

Nicole Robinson vs. Equifax Information Services, LLC, et al., U.S. District Court for the Eastern District of Virginia (Alexandria Div.), Case No. CIV 1:05 cv 1272. Expert reports. Deposition. Trial Testimony. Judge Walter H. Rice rejected Equifax's Daubert motion to exclude me from testifying.

Suzanne Sloane vs. Equifax Information Services, LLC, et al., U.S. District Court for the Eastern District of Virginia (Alexandria Div.), Case No. CIV 1:05 cv 1272. Expert reports. Deposition. Trial Testimony. Judge Leonie M. Brinkema rejected Equifax's Daubert motion to exclude me from testifying.

Matthew Kirkpatrick v. Equifax, LLC, U.S. District Court for District of Oregon, (Slip. Op. CV-02-1197-MO. FCRA Expert report. Trial Testimony. Judge Michael W. Mosman rejected Equifax's Daubert motion to exclude me from testifying.

Sandra Cortez vs. Trans Union, LLC., U.S. District Court for the Eastern District of Pennsylvania: No. 2:05–cv—05684-JF. FCRA. Expert Report. Daubert Hearing. Trial Testimony. Senior Judge John P. Fullam rejected Trans Union's Daubert motion to exclude me from testifying. (Attorney Bruce Luckman, who filed the Daubert motion, later retained me as his expert in the MicroBilt case listed above.)

Patricia Holmes vs. TeleCheck Intl., Inc., U.S. District Court for the Middle District of Tennessee (Nashville Div.). FCRA. Expert report. Deposition. Trial Testimony. Chief District Judge Todd J. Campbell presiding.

James & Beverly Simmons v. Ocwen Loan Servicing, LLC.: U.S. Bankruptcy Court for the Northern District of Illinois (Eastern Division), Bankruptcy No. 06-01295; Chapter 7. Trial Testimony. U.S. Bankruptcy Judge Bruce W. Black presiding.

Tracy Terry v. Cheryl Shepard, Eve Shepard, Frank Ferro, and STAR Consulting, LLC, CAL08- 03428 -- In the Circuit Court for Prince George's County, Maryland, Michele D. Hotten, Associate Judge presiding. Breach of contract. Damage to credit. Trial testimony. Sept. 22, 2009.

Federal Trade Commission vs. Accusearch, Inc., et al., U.S. District Court for the District of Wyoming, Case No. 06CV0105-D. FTC Section 5. Expert Report. U.S. Magistrate Judge William C. Beaman rejected Defendant's motion to exclude me from testifying.

Eddie Silva, et al. v. Haynes Furniture Co., Inc.: U.S. District Court for the Eastern District of Virginia: No. 4:04CV82. FCRA. Fairness hearing testimony. Judge Walter D. Kelley, Jr. presiding.

Joi Helmes v. Wachovia Bank N.A.: U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria), Case No: 01-81277-RGM, Chapter 7. Post-bankruptcy credit reporting. Expert report. Deposition. Trial Testimony. Judge Robert G. Mayer presiding.

Alex Campos and Michael York v. ChoicePoint Services, Inc.: U.S. District Court for the District of Georgia (Atlanta), Civ. Action No. 1-03-CV-3577-WSD. FCRA. Expert Declaration. Fairness hearing testimony. Judge William S. Duffey, Jr. presiding.

Denis W. Stasulis v. Suntrust: U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria), Case No: 04-12542-RGM, Chapter 7. Post-bankruptcy credit reporting. Expert report. Deposition. Trial Testimony. Judge Robert G. Mayer presiding.

Dwaine Perry, et al. v. FleetBoston Financial Corp.: U.S. District Court for the Eastern District of Pennsylvania: No. 04-507. FCRA. Expert Report. Fairness hearing testimony. Judge Berle M. Schiller presiding.

Tammy Cochran v. C&M Motors, LLC, dba I-10 Toyota, et al: U.S. District Court for the Central District of California, No. CV-03-3568FMC. FCRA. Expert Report. Trial Testimony Judge Florence-Marie Cooper presiding.

Myra Coleman v. Trans Union LLC, CA4: 98-CV-169B-B (USDC-Mississippi) FCRA. Expert report, deposition, trial testimony. Judge Neal B. Biggers presiding

Arthur Spengler v. Sears Roebuck & Co., Case No. C-03-0557. (Circuit Court, Wicomico County, Maryland). Tort, Interference with Business Relationships. Trial Testimony. Judge D. Davis qualified me as expert on credit scoring, credit reporting and FCRA-related issues.

Judy C. Thomas v. Trans Union LLC, U.S. District Court for the District of Oregon; Case No. 00- 1150-JE. FCRA. Expert report, deposition, trial testimony. Magistrate Judge John Jelderks presiding.

Scott E. Campbell v. G.E. Capital Auto Lease, Circuit Court For St. Mary's County, Maryland, Case No. 99-522. FCRA, invasion of privacy. Expert report, deposition. Judge Karen Abrams qualified me to testify, but the case settled one week before trial.

Franklin F. Grizzard, Jr. v. Trans Union, L.L.C., & Equifax Information Services L.L.C., et al.: U.S. District Court for the District of Virginia (Richmond Div.); Nos. 04-CV-625 & 04-CV-626, respectively. Expert report. Affidavit. Deposition. On the eve of trial, Judge Richard Williams rejected Defendant's motion to disqualify me. The case settled shortly thereafter.

Catherine Smith, et al. v. Progressive Corporation, et al.: U.S. District Court for the Middle District of Florida (Gainesville), Case No.1:00-CV-210-MMP. Expert Report, Declaration of Value, Fairness Hearing testimony. Judge Maurice M. Paul presiding.

Franklin E. Clark, et al. v. Experian, et al.: U.S. District Court for the District of South Carolina, Case Nos. 8:00-1217-22, 8:00-1218-22, 8:00-1219-22. Affidavit, Supplemental Affidavit (both affidavits were admitted into evidence without objection). Judge Cameron McGowan Currie presiding.

Lisa Brancato v. Specialized Loan Servicing, LLC: U.S. District Court for the District of New Jersey; No. 16-cv-05504-PGS-LHG.) Expert Report. Deposition. (2017)

Thomas Black v. General Information Services, LLC: U.S. District Court for the Northern District of Ohio [Eastern Div.] 1:15-cv-01731. Expert Report. Deposition. (2017)

Erwin Indich v. Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC, U.S. District Court for the District of Colorado. (No. 16-cv-02484-RM-MEH.) Expert Report. Deposition. (2017)

Foley Ma v. Equifax Information Services, LLC: U.S. District Court for the Northern District of Georgia [Atlanta Div.]. (Case No. 1:16-cv-01055-LMM-CMS.) Expert Report. Deposition. (2017)

Cynthia Todd v. AT&T Corp., Equifax Information Services, LLC, National Consumer Telecom and Utilities Exchange, Inc., ("NCTUE"), et al.: U.S. District Court for the Northern District of California. (Case No. 3:16-cv-03357-EDL.) Expert Report. Deposition. (2017)

Tammy Brown v. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC: U.S. District Court for the Middle District of North Carolina [Durham Div.]. (Case No. 1:16-cv-00488-LCB-JLW.) Expert Report. Deposition. (2017)

Darrell L. Taylor v. Equifax Information Services, LLC: U.S. District Court for the Western District of Oklahoma. (Case No. CIV-16-39-D). Expert Report. Deposition. (2017)

Angela Anderson v. Equifax Information Services, LLC: U.S. District Court for the District of Kansas. (Case No. 2:16-cv-02038). Expert Report. Deposition. (2016)

Kirk McDonough v. JPMorgan Chase Bank, N.A., Trans Union LLC, et al., in the U.S. District Court for the Eastern District of Missouri [Eastern Div.]; No. 4:15-cv-00617-JCH. Expert Report. Deposition. (2016). Judge Jean C. Hamilton rejected Chase's Daubert motion to exclude me from testifying. (Case settled shortly thereafter.)

Jim M. Peckey v. Bank of America, et al.: U.S. District Court for the District of Maryland [Baltimore Div.]; No.: 1:14-cv-00433- RDB. Expert Report. Deposition. (2016)

Marci Curliss, v. Ocwen Loan Servicing, LLC: U.S. District Court for the Western District of Missouri [Western Div.]; Case No. 4:14-cv-00428-SRB. Expert Report. Deposition. (2016)

Robert James Anthony v. Experian Information Solutions: U.S. District Court for the Eastern District of California (No. 2:14-cv-01230-MCE-EFB). Expert Report. Deposition. (2016)

Peter Blasi, Jr., et al., v. United Debt Services, LLC, et al.,: U.S. District Court for the Southern District of Ohio [Eastern Div.]; (Case No.: 2:14-cv-0083). Expert Report. Deposition. (2016)

Henry L. Farrin, Jr., et al. v. Ocwen Loan Servicing, LLC, in the United States District Court for the District of New Hampshire (Case No. 1:15-cv-00145-JL) Expert Report. Deposition. (2016)

Karen Duell v. First National Bank of Omaha; and, The Dunning Law Firm: U.S. District Court for the Southern District of California; No.: 14-cv-2774 WQH (JLB). Expert Report. Deposition. (2016)

Martin Valenzuela v. Equifax Information Services, LLC: U.S. District Court for the District of Arizona. (Case No. CV-13-02259-PHX-DLR). Expert Report. (2015) Judge Douglas L. Rayes rejected Equifax's Daubert motion to exclude me from testifying.

Debra B. Croft v. Bayview Loan Servicing, LLC: in the United States District Court for the District of South Carolina [Columbia Div.] (Case No. 3:14-cv-04630-MGL). Expert Report. Deposition. (2015)

Carlos A. Vasquez-Estrada v. Collecto Inc.: U.S. District Court for the District of Oregon [Portland Div.]; No. 3:14-CV-01422-ST. Expert Report. Deposition. (2015)

Charles Edward Steed, on behalf of himself and all others similarly situated, and Amy Summers, on behalf of herself and all others similarly situated: U.S. District Court for the Northern District of Georgia [Atlanta Div.] (Case 1:14-cv-00437-SCJ-ECS). Expert Report. Deposition. (2015)

Johnnie Teresa Marchisio & Adrian Marchisio v. Carrington Mortgage Services, LLC: in the United States District Court for the Southern District of Florida (Case # 14-cv-14011-KAM). Expert Report. Deposition. (2015)

Elizabeth Roberts v. Vincent St. John & Safeco Insurance Co. of America: In the District Court of Oklahoma County, State of Oklahoma (Case No. CJ-2012-1051). Expert Report. Deposition. (2015)

Roy Jack Williams v. Allstate Fire & Casualty Co., U.S. District Court for the Eastern District of Oklahoma (Case No. 5:13-cv-00828-D). Expert Report. Deposition. (2015)

John Mark Cowan v. GE Capital Retail Bank, et al.: U.S. District Court for the Northern District of California [San Jose Division]; 5:13-cv-3935-BLF-PSG. Expert Report. Deposition. (2015)

Martin Kevin Sammy v. Equifax Information Services, LLC: U.S. District Court for the Eastern District of Pennsylvania. (Case No. 2:14-cv-00307-BMS) Expert Report. (2014) Deposition. (2014)

Richard G. Beck, et al. v. Eric K. Shinseki, et al.: U.S. District Court for the District of South Carolina [Columbia Div.] (No. 3:13-cv-999-TLW). Expert Report. Deposition. (2014)

Roberto Sevi v. Experian Information Solutions, Inc., Trans Union LLC & Nationstar Mortgage, LLC.: U.S. District Court for the Middle District of Florida [Orlando Div.]; No. 6:13-cv-1433-Orl- 37KRS. Expert Report. Deposition. (2014)

Jean Gardy Lacroix v. Equifax Information Services, LLC: U.S. District Court for the Southern District of Florida. (Case No. 9:14-cv-80334) Expert Report. Deposition. (2014)

Thanh Cham Thi Thach v. Virginia. U.S. District Court for the Eastern District of Virginia [Alexandria Div.] (Case No. 3:14-cv-00070-HEH) Expert Report. Deposition. (2014)

Lee Pele v. Pennsylvania Higher Education Authority, Inc., U.S. District Court for the Eastern District of Virginia [Alexandria Div.] (Case No. 1:13-cv-01531-JCC-TRJ) Expert Report. Deposition. (2014)

Anthony Peck v. Equifax Information Services, LLC, Experian Information Solutions, Inc., & DTE Energy Co.: U.S. District Court for the District of Colorado (No. 13-cv-02924-PAB-CBS). Expert Report. Deposition. (2014)

Timothy Lawrence v. National Grid USA Service Co., National Recovery Agency, et al.: U.S. District Court for the Eastern District of New York (13 CV 4979 – CBA/VMS).

Rockwell Scharer III v. OneWest Bank, Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, et al.,: U.S. District Court for the Central District of California; No.: 2:13-cv-00080-DSF-AGR. Expert report. Deposition. (2014)

Ronald A. Jackson, et al. v. Equifax Information Services, LLC, et al.: U.S. District Court for the Southern District of Florida. 1:13-cv-21691-DLG

James A. Davenport v. Sallie Mae, Inc., et al.: U.S. District Court for the District of Maryland; PJM 12-1475. Expert report. Deposition. (2014)

Steven Strong v. Collecto, et al., Experian Information Solutions, LLC: U.S. District Court for the Northern District of Texas [Dallas Div.]; No. 3-12-cv-05115-P. Expert report. Deposition. (2014)

Kovalerchik v. Experian Information Solutions, LLC: U.S. District Court for the Central District of California (No. 2:13-cv-05419 – GHK-FFMx). Expert report. Deposition. (2014)

Michael Dreher v. Experian Information Solutions, Inc., et al.: U.S. District Court for the Eastern District of Virginia (Case 3:11-cv-00624-JAG). Expert report. Deposition. (2014)

Gary Wright v. Equifax Information Solutions, LLC, et al: U.S. District Court for the District of Colorado (No 1:12-cv-3268). Expert Report. Deposition. (2013)

Patriot General Insurance Company v. Lisa Krebs and Carmen McReynolds: U.S. District Court for the Northern District of Georgia [Atlanta Div.] (1:12-CV-0997-RWS). Expert Report. Deposition. (2013)

Courtney Douglass v. Convergent Outsourcing. (U.S. District Court for the Eastern District of Pennsylvania; Civil No. 2-12-cv-01524). Expert Declaration. Deposition. (2013)

Amanda Ellis v. Experian Information Solutions, Inc., Trans Union LLC, Equifax Information Services, LLC &: U.S. District Court for the Northern District of Alabama [Middle

Div.]; No.: 4:12-cv- 02779 RBP. Expert report. Deposition.

Denese Toliver v. Experian Information Solutions, Inc., Trans Union LLC, et al.: U.S. District Court for the Southern District of Texas [Houston Div]. No. 4:12-cv-02436; Expert report. Expert rebuttal report. Declaration. Deposition.

David Osada, et al. v. Experian Information Solutions, Inc.: U.S. District Court for the Northern District of Illinois (Eastern Division), No. 11-CV-02856. Expert report. Deposition.

Kathleen Jane Ferguson v. Asset Acceptance Services, LLC., et al.: U.S. District Court for the District of Missouri [Eastern Div.]. (4:11-cv-00425--AGF). Expert report. Deposition.

Arin A. Bovay, et al. v. Sears, Roebuck, and Co.: U.S. Circuit Court of Cook County, Illinois [County Dept., Chancery Div.]; Case No. 01-CH-18096; consolidated with Case Nos. 02-CH-4693 & 03-CH-07605. Expert report. Deposition.

Mary Perkins White v. Green Tree Servicing LLC, GMAC Mortgage LLC, Trans Union LLC, Equifax Information Services, LLC & Experian Information Solutions, Inc.,: U.S. District Court for the Western District of Washington [Tacoma Div.]; No.: 3:11-CV-005439RBL Expert report. Deposition.

Ilene Modica v. American Suzuki Financial Services, TransUnion, LLC, & Equifax Information Services, LLC: U.S. District Court for the District of Arizona. (2:11-CV-02183-PHX-DGC) Expert report. Deposition.

Denise Acquafredda v. Experian Information Solutions, et al: U.S. District Court for the District of Arizona – (No. CV 2011-054368). Expert report. Deposition.

Jose Calderon v. Experian Information Solutions: U.S. District Court for the District of Idaho (No. 1:11-cv-00386-EJL). Expert report. Deposition.

First Carolina Bank v. Charles S. McCue, et al.: In The Court of Common Please, Fourteenth Judicial Circuit, State of South Carolina, County of Beaufort. Civil Action No: 07-CP-07-03027. Deposition.

Maria Pintos v. Pacific Creditors Assoc., et al.: U.S. District Court for the Northern District of California [Oakland Div.] C 03-5471 CW. Expert report. Deposition.

Marie Ann Fuges v. Southwest Financial Services, LTD: U.S. District Court for the Eastern District of Pennsylvania (No 09-699). Expert report. Deposition.

Alisha Wilkes v. Experian Information Solutions, et al.: U.S. District Court for the Eastern District of Virginia (CV- 1:10-cv-01160-CMH -TRJ). Expert report. Deposition.

Serena Beachley v. PNC Bank N.A..: U.S. District Court for the District of Maryland [Northern Div., Case No. CCB-10-1774. Expert report. Deposition.

In re: Pammalla Shannon Uplinger v. Rees Broome, P.C. U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria Div.); Case No. 90-13129-RGM. Expert report. Deposition.

Jose Soto v. Capital One Auto Finance, et al.: U.S. District Court for the District of Western Washington (2:08-cv-01838-RSM). Expert report, deposition.

Terri N. White, Jose Hernandez, et al. v. Experian Information Solutions, et al.: USDC-Central Dist. Of California; Case No. 05-cv-1070- DOC (MLGx). Declarations, Deposition.

Tara Andrews v. Equifax Information Solutions, Inc., et al.: U.S. District Court for the Western District of Washington; (No. 2:09–CV–00817–JJC). Expert report. Deposition.

Michelle Jansen v. Equifax Credit Information Services, et al.: U.S. District Court for the District of Oregon; No. 05-CV 0385-BR. Expert report. Deposition.

James Byrd v. TransUnion LLC, Experian Information Solutions, Inc., Equifax Credit Information Services, LLC: U.S. District Court for the District of South Carolina [Columbia Div.]. Expert report. Deposition.

David L. Jackson v. Trans Union, et al.: U.S. District Court for the District of Oregon. FCRA. No. CV-08-0060-MO. Expert report. Deposition.

Richard Chakejian v. Equifax Information Services, LLC. : U.S. District Court for the Eastern District of Pennsylvania; No. 07-2211. Bruce A. Summerfield v. Equifax Information Services, LLC. : U.S. District Court for the District of New Jersey; No. 08-1450. FCRA. Expert reports. Consolidate deposition.

Marlos Uzzell v. Experian Information Systems, Trans Union, et al.: U.S. District Court for the Eastern District of Pennsylvania (No. 2:08-CV-02538-CMR). Expert report. Deposition.

Baxter Robinson v. Chase Mortgage Services, Inc., et al.: U.S. District Court for the District of South Carolina (Charleston Div.) (2:08-cv-02087-PMD). Expert report, deposition.

Risa Joyce Deutsch v. Arrow Financial Services LLC, et al: U.S. District Court for Middle the District of Florida [Tampa]; No. 8:08-cv-01469. Damage to credit. Expert report, deposition.

Michael D. Scott, et al. v. Graphic Center, CalPERS, et al.: Superior Court of the State of California, County of Los Angeles. Case No. BC390593397636. Data breach. Declaration.

Christopher K. Jung v. Trans Union, et al.: U.S. District Court for the Eastern District of Pennsylvania (No. 07-2514). Expert report, deposition.

Robert Saindon v. Equifax Information Services, et al.: U.S. District Court for the Northern District of California (08-cv-01744 WHA). Expert report, declaration. Deposition.

Christina Lee v. TransUnion, et al.: U.S. District Court for the District of Oregon (CV-07-0998- MO). Expert report, deposition.

Emelia Pasternak v. TransUnion, et al.: U.S. District Court for the Northern District of California. Case No. 4:07-cv-04980-CW Expert report, deposition.

Stacy Fiano v. Experian Information Solutions, et al., U.S. District Circuit Court of the Southern District of Florida 9:08-cv-80555. Expert report, deposition.

Alana Valerie Sheldon v. Trans Union, LLC., LVNV Funding, LLC, & Resurgent Capital Services L.P.: U.S. District Court for the District of Maryland; 8:08-cv-00057-PJM. Expert report, deposition.

In Re: Cellphone Termination Fee Cases, Superior Court of the State of California, Alameda County, JCCP No. 4332. Deposition.

Karl Benedikt v. ChoicePoint, Inc.: U.S. District Court for the District of New Jersey [Newark Vicinage]; 07-2569. Expert report, deposition.

Abdirizak Gayre v. CSC Credit Services, Inc., Equifax Information Services, LLC, and Afni, Inc.: U.S. District Court for the District of Minnesota (C.A. No. 07-CV-0622 [JRT/FLN]). FCRA. Expert report, deposition.

Erin Ayles v. Experian Information Solutions, Inc.: U.S. District Court for the Eastern District of Virginia (Alexandria Division); 1:07cv 662. Expert report, deposition.

Maria D. v. Comcast Corp., Sacramento Superior Court, Case No. 03AS05745. Deposition.

Terri N. White, et al. v. Experian Information Solutions, Inc., U.S. Dist. Ct. Central Dist. Of Calif. – Case No. 05-cv-1070- DOC (MLGx); Lead Case. Expert declarations. Depositions.

In Re: Farmers Insurance Co., Inc., FCRA Litigation, U.S. District Court for the Western District of Oklahoma, Case No. CIV 03-158-F. FCRA. Expert report, deposition.

Steven E. Beck v. Equifax Information Services, et al.: U.S. District Court for the Eastern District of Virginia: No. 1-05cv347. FCRA. Expert report, deposition.

Mary Ann Whiteker, et al. v. Chase Bank, et al.

Ford Motor Credit Co. v. Sudesh Agrawal, Court of Common Pleas, Cuyahoga Country, Ohio; Case No. CV04536588. Credit reporting and credit scoring. Deposition.

Larry Alabran v. Capital One Services, Inc.: U.S. District Court for the Eastern District of Virginia (Richmond Division); Case No. 3:04-CV-935. Expert report, deposition.

Gail Cope v. MBNA American Bank NA: U.S. District Court for the District of Oregon; No. 04- CV-493-JE. Expert report, deposition.

Robert Gordon Peoples v. Experian Services Corp., et al.: U.S. District Court for the Central District of California: No. CV-04-1378 CAS (Ex). Expert report. Deposition.

Lottie Robertson v. Experian Information Services, Inc. & Capital One Bank: U.S. District Court for the Eastern District of Michigan (Southern Div.) No. 04-72308. Expert report. Deposition.

Barbara A. Harris v. Experian Information Solutions, Inc., and Equifax Credit Information Services, Inc.: U.S. District Court for the District of Oregon, Civil No. 01-1728-JE. FCRA. Expert reports. Deposition

Bruce Danielson v. Experian Information Solutions: U.S. District Court for the Northern District of Texas, Case No: 3-04CV-1722N. FCRA. Expert report. Deposition.

Stacy Lawton Guin, et al. v. Brazos Higher Education Service Corporation, Inc.: USDC-Minnesota – No. CV 05-668 RHK/JSM. Negligence. Security Breach. Affidavit. Deposition.

Anthony Chin v. State Dept. Federal Credit Union: Circ. Ct. Prince George's County (Maryland); Civ. Act. No. CAL04-12778; Tort. Deposition. Trial testimony.

James M. McKeown v. Sears Roebuck & Co., et al: U.S. District Court for the Western District of Wisconsin, Civil No. Case No. 03-CV-0528 C. Expert Report, deposition.

Paulette Field v. Trans Union LLC, et al., Case No. 01 C 6390 (USDC-N.D. Illinois - Eastern Div. FCRA. Expert report. Deposition.

Earle E. Ausherman, et al. v. Bank of America Corporation et al.: U.S. District Court for the District of Maryland, Civil Action No. MJG-01-438. FCRA. Expert report. Deposition.

Jesse Klco v. Elmhurst Dodge, U.S. District Court for the Northern District of Illinois (Eastern Division) Civil Action No. 01 C 0433. FCRA. Expert report, deposition.

(David & Ruthie Keefner v. Webb Ford, Inc. & Deon L. Willis.: U.S. District Court for the Northern District of Illinois (Eastern Division), Civil Action No. 02C-4643. FCRA. Expert report. Deposition.

Anthony & Alethea Preston v. MGIC, U.S. District Court for the Middle District of Florida (Ocala), Case No. 5:03-cv-111-Oc-10GRJ. FCRA. Expert report, deposition.

Bruce Butcher and Pam Butcher v. Chase Manhattan Bank, U.S.A., Inc., U.S. District Court for District of South Carolina, Case No. 8:03-3184-26. FCRA. Expert report, deposition.

Karen Nienaber, et al. v. Citibank (South Dakota) N.A.,: U.S. District Court for the District of South Dakota [Southern Div.}; Civ. No. CIV 04-4054. Declaration relied upon by court in settlement hearing.

**FEE**

My fee is $300 per hour for preparation, consulting trial testimony, plus reasonable travel time, plus travel costs and expenses; $400 per hour, or a minimum of $1,200 per day, for deposition testimony, plus reasonable travel time, plus travel costs and expenses.

**MATERIALS CONSIDERED**

In specific preparation for this case, in addition to the material cited in this report, I have reviewed the following:

Plaintiff's Second Amended Complaint
Defendants Answer to Second Amended Complaint
Plaintiff's credit reports
Bates-Stamped documents produced by Defendant, as of the date of this report.
Deposition of Brad Hardwick and exhibits
Deposition of Plaintiff and exhibits

For foundational purposes, I also generally rely upon:

The Fair Credit Reporting Act
Fair Credit Reporting Act, National Consumer Law Center, 2013 – 8th Edition (Boston)

Fair Credit Reporting, [6th Edition], National Consumer Law Center, 2006 (Boston)

Credit Scores and Credit Reports: How The System Really Works, What You Can Do (3rd Edition, Privacy Times 2007)

My opinions in this case are also based on my 40-year profession of following privacy developments including those relating to the consumer reporting and information broker industry and the criminal justice system as a journalist, editor, publisher and privacy expert. My experience includes listening to and participating in dozens of hours of Congressional testimony, hearings before the Federal Trade Commission, media coverage, studies by independent groups, my own personal observations and numerous contacts, and my previous work preparing to be an expert witness in other FCRA cases.

**Executed This The 2nd Day of October 2017, in Bethesda, Maryland**

**/s/ Evan D. Hendricks**
**Evan D. Hendricks**
PO Box 302
Cabin John, MD 20818
(301) 229 7002